ROBERT C. O'SULLIVAN *v.* LAWRENCE F. DELPONTE,
COMMISSIONER OF MOTOR VEHICLES
(10452)

DUPONT, C. J., LANDAU and HEIMAN, Js.

Argued February 19—decision released April 21, 1992

*Carla Ottaviano,* for the appellant (plaintiff).

*Lawrence G. Widem,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

LANDAU, J. The plaintiff, Robert O'Sullivan, appeals from the trial court's dismissal of his administrative appeal. An administrative hearing was held to determine whether the plaintiff caused or contributed to a fatality, and, if so, whether his motor vehicle license should be suspended. A hearing officer found in the affirmative and suspended the plaintiff's license for three years. The plaintiff claims that the trial court improperly concluded that the following evidentiary rulings of the hearing officer were proper and that the plaintiff was not substantially prejudiced by these rulings: (1) the admission of the police report that contained hearsay statements of witnesses without requiring the witnesses' presence at the hearing; (2) the admission of a copy of the police report rather than the original, where the author could not recall if any corrections had been made; and (3) the admission of only a portion of the officer's investigation file. We affirm the judgment of the trial court.

The following facts are undisputed. On August 9, 1988, at approximately 9:30 p.m., the plaintiff was driving southbound in the left lane on Interstate 95 near exit 14 in Norwalk. The left lane, however, was closed for road construction and the closure was indicated by both signs and cones placed in the lane. As the plaintiff was attempting to merge into the center lane, he noticed high beams being flashed from behind him. At the same time that the plaintiff was turning the wheel to merge into the center lane, he looked up to adjust his rearview mirror, taking his eyes off the road. When he returned his attention to the road, he saw the brake lights on in the car immediately in front of him in the center lane. The plaintiff immediately applied his brakes, but was unable to avoid a collision with that car, which was driven by Joseph Grumblatt. Also in the car were his wife Louise, and Stephen and Sylvia Luciano. The Grumblatt car was forced over the

guardrail, rolled down an embankment and came to rest on its roof. Louise Grumblatt was thrown from the car and died as a result of her injuries.

Trooper Joseph Kubish of the state police arrived at the scene shortly thereafter and examined the physical evidence, including the skid marks, the positions of the two cars and the damage the cars had sustained and interviewed Joseph Grumblatt, the plaintiff, and David Rubin, the driver of the car behind the plaintiff.[1] The plaintiff was arrested six months later on February 7, 1989, and charged with negligent homicide with a motor vehicle in violation of General Statutes § 14-222.

The plaintiff was present at the administrative hearing and was represented by counsel. Only two witnesses testified at the hearing, Kubish and Sal Rermo, a business associate of the plaintiff. The hearing officer made the following findings of fact:

"1. On August 9, 1988, at about 9:43 p.m. Robert C. O'Sullivan was operating a 1984 Toyota Celica on I-95 westbound near the Richard Avenue overpass in Norwalk.

"2. Mr. O'Sullivan was operating in the far left lane of three travel lanes. Said lane was clearly marked as closed and traffic had been directed to merge right.

---

[1] The police report contained the following statement from the plaintiff which was given to Kubish at the scene: "I was traveling south on 95 coming from Norwalk Exit 15 connector leaving work (New England Mobil Communications, Inc.) heading to my girlfriend's house in Stamford. I was between the left and center lane (in the middle of a lane change) someone behind me flashed their high beams. I saw the flash of light, so I reached up and adjusted my mirror at the same time I was turning the wheel. By the time I looked back down from the mirror I saw the red brake lights and then I hit him (the brown car) in the rear. Out of the corner of my eye I saw the car go over the rail. I stopped on the right shoulder and ran down to the other car to see if they were alright. At the time of the incident, around 9:30 p.m. I was driving my car a 1984 Toyota Celica GT, color red bearing CT registration 587-FDA."

"3. Mr. O'Sullivan passed a vehicle being operated by David A. Rubin who was in the center lane. While operating at speed in excess of 55 miles per hour Mr. O'Sullivan attempted to change lanes.

"4. By Mr. O'Sullivan's statement he admits that he took his eyes off the road to adjust a rearview mirror while in the process of the lane change.

"5. When Mr. O'Sullivan looked down from his rearview mirror he observed the red brake lights of a vehicle in front of him, but was unable to react.

"6. Mr. O'Sullivan struck the rear of a 1981 Pontiac being operated by Joseph J. Grumblatt with sufficient force to spin the Grumblatt vehicle 180 degrees in a northerly direction, across the right lane, striking the guardrails off the right shoulder. The Grumblatt vehicle flipped over the guardrails and barrel rolled down the embankment.

"7. At the time of the collision, Louise F. Grumblatt was a passenger in the vehicle being operated by Joseph L. Grumblatt.

"8. As a result of injuries received in this collision Louise F. Grumblatt expired.

"9. The closure of the extreme left lane was clearly posted and the slowing and merging traffic should have been evident to Mr. O'Sullivan.

"10. Mr. O'Sullivan operated his vehicle with reckless disregard for others using the roadway, contrary to the provisions of the Connecticut General Statutes."

The hearing officer concluded that the plaintiff "caused or contributed [to] and is responsible for the death of Louise Grumblatt . . . ." and suspended the plaintiff's license, pursuant to General Statutes § 14-111 (c),[2] for a period of three years to commence September 1, 1990.

---

[2] General Statutes § 14-111 (c) provides in pertinent part: "SUSPENSION OF LICENSE AFTER FATAL ACCIDENT. The commissioner shall not suspend

The plaintiff appealed the hearing officer's decision to the Superior Court, pursuant to General Statutes § 4-183. On June 27, 1991, the trial court dismissed the plaintiff's appeal. The court found that the hearing officer properly admitted a copy of the police report although (1) it contained hearsay statements of witnesses to the accident without requiring their presence at the hearing, (2) it was not the original report, but rather a copy, and (3) it did not include the photographs the police had been requested to produce.[3] The court concluded that the plaintiff received a fair and adequate hearing and that substantial evidence existed to support the hearing officer's findings, but remanded the case to the hearing officer for articulation of the plaintiff's request for suspension credit. "It is the trial court's decision that is appealed from, not that of the [hearing officer], and it is the trial court's decision that we review." *Gallacher* v. *Commissioner of Revenue Services*, 221 Conn. 166, 176, 602 A.2d 996 (1992).

The trial court found that the hearing officer properly admitted the police report and the hearsay statements of the two witnesses contained therein without requiring the witnesses' presence at the hearing. We agree with the trial court. Initially, it must be noted that " '[i]t is fundamental that administrative tribunals

the license of any operator concerned in any motor vehicle accident resulting in the death of any person solely because such death has occurred, unless the facts as ascertained by the commissioner, after a hearing, indicate responsibility on the part of such operator for such accident, and, if, after such hearing, the commissioner finds that such operator has caused or contributed to such death through the violation of any provision of this chapter or of chapter 248 or through negligence or carelessness, such suspension shall be for not less than one year. . . ."

[3] The contents of the police report that were introduced into evidence at the hearing included, but were not limited to, the following: an incident report and supplement thereto, vehicle damage records, statements of the plaintiff and two witnesses, a diagram of the accident scene, two reports indicating the nature of the photographs taken, and the five page investigation report of Trooper Joseph Kubish.

are not strictly bound by the rules of evidence and that they may consider exhibits which would normally be incompetent in a judicial proceeding, so long as the evidence is reliable and probative.' " *Griffin* v. *Muzio,* 10 Conn. App. 90, 93, 521 A.2d 607, cert. denied, 203 Conn. 805, 525 A.2d 520 (1987), quoting *Lawrence* v. *Kozlowski,* 171 Conn. 705, 710, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); see also *Casella* v. *Civil Service Commission,* 4 Conn. App. 359, 362, 494 A.2d 909 (1985), aff'd, 202 Conn. 28, 519 A.2d 67 (1987). Evidence in written form is not, as a matter of law, inadmissible in an administrative hearing unless it substantially prejudices a party. *Carlson* v. *Kozlowski,* 172 Conn. 263, 266, 374 A.2d 207 (1977). Moreover, hearsay evidence is not prohibited in administrative proceedings by the Uniform Administrative Procedure Act, which permits the introduction of oral or documentary evidence.[4] *Tomlin* v. *Personnel Appeal Board,* 177 Conn. 344, 348, 416 A.2d 1205 (1979).

The plaintiff bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion. *Connecticut Natural Gas Corporation* v. *Public Utilities Control Authority,* 183 Conn. 128, 139, 439 A.2d 282 (1981). Where such a showing has been made the administrative order must be invalidated. *Lawrence* v. *Kozlowski,* supra, 723.

The plaintiff has wholly failed to make such a showing. He relies on our Supreme Court decision in *Carl-*

---

[4] Although police reports are admissible under the business records exception to the hearsay rule; *Hutchinson* v. *Plante,* 175 Conn. 1, 4, 392 A.2d 488 (1978); statements of witnesses repeated in the report do not fall within this exception because the witnesses are not engaged in the business of reporting their observations of automobile accidents. Id., 4–5. The plaintiff's statement contained in the police report, however, is admissible as an admission. *Swenson* v. *Sawoska,* 215 Conn. 148, 151, 575 A.2d 206 (1990).

*son* v. *Kozlowski,* supra, where the court addressed whether affidavits of witnesses to an accident were properly submitted at the administrative hearing despite the fact that the witnesses were not present. The only witness who testified at the hearing was the investigating police officer. The only evidence pointing to the plaintiff's culpability was contained in the affidavits of four witnesses to the accident who were not present at the hearing. The affidavits were admitted over the plaintiff's objection. In reviewing this claim, the Supreme Court relied on the fact that the evidence challenged by the plaintiff was the only evidence indicating the plaintiff's culpability. The court stated that "[i]f hearsay evidence is sufficiently trustworthy to be considered ' "substantial evidence" ' and it is the *only* evidence probative of the plaintiff's culpability, its use to support the agency decision would be prejudicial to the plaintiff, absent a showing, which has not been made here, that the appellant knew it would be used and failed to ask the commissioner to subpoena the witnesses." (Emphasis added.) Id., 267.

This case is more like *Lawrence* v. *Kozlowski,* supra, than *Carlson* v. *Kozlowski,* supra. In *Lawrence,* an administrative hearing was conducted to determine whether the plaintiff was responsible for an automobile accident. The plaintiff challenged the admission of various reports indicating he was responsible for the accident and that he had pled nolo contendere to a charge of negligent homicide. The court concluded that "[e]ven if the challenged documents had been excluded the commissioner's conclusion was supported from other substantial evidence." *Lawrence* v. *Kozlowski,* 714–15.

As in *Lawrence* and unlike *Carlson,* the documents challenged here, were not the only evidence indicative of the plaintiff's culpability. Giving the plaintiff the benefit as to each of his evidentiary claims, there remained substantial evidence from which the hearing

officer could reasonably have concluded that the plaintiff "caused or contributed [to] and is responsible for the death of Louise Grumblatt." The plaintiff's admission of liability in his statement to Kubish, the physical evidence Kubish observed at the scene of the accident, including the skid marks, the position of the vehicles, the damage sustained by the vehicles and the remainder of the police report, including the diagram of the accident scene and the vehicle damage record, are individually and collectively sufficient to substantiate the hearing officer's finding. Additionally, because it is highly likely that the plaintiff knew the police report would be introduced at the hearing and failed to subpoena the witnesses, the plaintiff has not sustained his burden of proving that he was substantially prejudiced by the hearing officer's reliance on improper evidence. See *Reconstruction Finance Corporation* v. *Banker's Trust Co.,* 318 U.S. 163, 170, 63 S. Ct. 515, 87 L. Ed. 2d 680 (1942).

The trial court also found that the hearing officer properly admitted a copy of the police report rather than the original which had been destroyed. The plaintiff claims that the trial court improperly reached this conclusion and relies on an unreported Superior Court case.

As defined by our Supreme Court, the best evidence rule requires a party to produce an original writing, *if it is available,* when the terms of that writing are material and must be proved. *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 10, 513 A.2d 1218 (1986); see also B. Holden & J. Daly, Connecticut Evidence (1988) § 82 (a). The " 'basic premise justifying the rule is the central position which the written word occupies in the law.' " *Brookfield* v. *Candlewood Shores Estates, Inc.,* supra, quoting C. McCormick, Evidence (1984) § 230; see also *Coelm* v. *Imperato,* 23 Conn. App. 146, 150, 579 A.2d 573 (1990); *Morales* v.

*Saint Francis Hospital & Medical Center,* 9 Conn. App. 379, 382, 519 A.2d 86 (1986), cert. dismissed, 202 Conn. 807, 520 A.2d 1287 (1987). Although the plaintiff objected to the introduction of the copy and Kubish testified that he was unsure whether there had been changes made to the copy, the plaintiff offered no evidence that the copy was not accurate, nor, in fact, did he dispute the contents of the copy. See *Guaranty Bank & Trust Co.* v. *Dowling,* 4 Conn. App. 376, 382, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985).[5] Also, the plaintiff offered no evidence in support of his claim that he was substantially prejudiced by the introduction of the copy. The trial court, therefore, properly concluded that the copy of the investigation report was admissible.

Finally, the trial court found the plaintiff's claim regarding the absent accident photographs to be without merit. The court reasoned that although Kubish failed to bring the photographs to the hearing as requested, the plaintiff could not show that he was substantially prejudiced by their absence. Furthermore, he failed to request a continuance for the purpose of securing the photographs. The plaintiff's failure to request a continuance indicates a willingness to continue with the proceeding. *State* v. *Festo,* 181 Conn. 254, 266, 435 A.2d 38 (1980). Because the plaintiff failed to request a continuance to secure the photographs, he cannot now complain that he was prejudiced by their absence. See *State* v. *Jones,* 205 Conn. 723, 725, 535 A.2d 808 (1988); *State* v. *Richardson,* 204 Conn. 654, 670, 529 A.2d 1236 (1987); *State* v. *Williams,* 203 Conn. 159, 171, 523 A.2d 1284 (1987).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Moreover, "the best evidence rule 'at common law is a preferential, rather than an exclusionary rule.' Comment on Rule 602 Clause (a) of the Model Code of Evidence (American Law Institute) p. 301 . . . ." *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 12, 513 A.2d 1218 (1986).