# HALL-BROOKE FOUNDATION, INC. *v.*
# CITY OF NORWALK
# (AC 19101)

Lavery, Spear and Daly, Js.[1]

Argued January 19—officially released June 20, 2000

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Irwin J. Gordon*, for the appellant (plaintiff).

*Donald F. Reid*, for the appellee (defendant).

*Opinion*

DALY, J. The plaintiff, Hall-Brooke Foundation, Inc., appeals from the judgment of the trial court, rendered in favor of the defendant, the city of Norwalk (city), in accordance with the report of an attorney trial referee. Although the plaintiff raises several issues on appeal, one is dispositive; that is, whether the court improperly accepted the report of the attorney trial referee and denied the plaintiff's exception and objection to the report because the referee improperly determined that the social service caseworkers did not have either express or apparent authority to authorize the admission of, and accept responsibility for the payment for medical services rendered to, forty indigent patients.[2] We reverse the judgment of the trial court.

The plaintiff, a private psychiatric and substance abuse hospital, brought this contract action against the city for payment for medical services provided by the plaintiff to forty indigent residents of the city between October 13, 1994, and March 28, 1995. The case was referred to an attorney trial referee who heard two days of evidence and submitted a report comprised of findings of fact, conclusions of law and a recommended judgment for the city. The plaintiff moved to correct various portions of the referee's report. The referee, however, essentially denied all of the plaintiff's

[2] The plaintiff also alleges on appeal that the court improperly accepted the report of the attorney trial referee because the referee made certain erroneous findings of fact and conclusions of law and improperly permitted certain witnesses to testify. Because none of these issues will recur in a new trial, we need not address them.

requests. The plaintiff then filed an exception to the referee's report, as well as an objection to the acceptance of the report, both of which were denied. The court accepted the report of the referee and rendered judgment in accordance with the report without a written memorandum of decision.

"The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [attorney trial] referee." (Citations omitted; internal quotation marks omitted.) *Villano* v. *Polimeni*, 54 Conn. App. 744, 747, 737 A.2d 950, cert. denied, 251 Conn. 908, 739 A.2d 264 (1999). In addition, while a reviewing trial court may not substitute its findings for those of the referee, it may find facts contrary to those found by the referee where "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact . . . ." (Internal quotation marks omitted.) *Schmaling* v. *Schmaling*, 48 Conn. App. 1, 10, 707 A.2d 339, cert. denied, 244 Conn. 929, 711 A.2d 727 (1998).

The following facts are undisputed. Pursuant to General Statutes § 17b-259, the city is obligated to pay for certain medically necessary services provided to a general assistance recipient. The plaintiff provides detoxification services to patients on both an inpatient and outpatient basis, including general assistance recipients. Pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., municipalities are reimbursed by the state for detoxification services provided to patients under the age of twenty-one and over the age of sixty-five; the state will not reimburse for detoxification treatments for patients between the ages of twenty-one

and sixty-five provided by freestanding providers like the plaintiff.[3]

From July 18, 1991, to June 7, 1992, the city of Norwalk department of social services (department) authorized, approved and paid the plaintiff for detoxification treatment for approximately twenty-three indigent general assistance residents of the city between the ages of twenty-one and sixty-five. The mayor of the city testified that while there was no specific line item in the budget for the payment for detoxification services to the plaintiff, there was "broad based" money in the 1991 budget to pay for food, shelter and medically necessary services for general assistance recipients in the city. The general welfare budget is distributed by the department.

Between October 13, 1994, and March 28, 1995, the plaintiff provided medical services to forty indigent general assistance recipient residents of the city. The department caseworkers authorized the admission of these individuals and agreed, both orally and by follow-up letter, to pay the plaintiff for the medical services provided. In fact, some of the department caseworkers who authorized the admissions in 1994 and 1995 were the same individuals who had authorized the admissions that had been paid for by the city in 1991 and 1992. After being billed by the plaintiff, the operations manager of the department promised "to honor" the outstanding bills.

At some point during 1993 or 1994, however, an internal policy decision had been made in the city by the mayor's office that referrals to private freestanding hos-

---

[3] It is unclear whether reimbursement for patients between the ages of twenty-one and sixty-five was available prior to a change in the law in 1993. It is undisputed, however, that after 1993, the state no longer provided reimbursements for detoxification services to general assistance recipients in this age group.

pitals for detoxification treatment for general assistance recipients between the ages of twenty-one and sixty-five were no longer authorized. The city contends that during the time period covering the unpaid services, no request for budget approval was made, nor was there any item in the budget authorized by the common council enabling the expenditure of taxpayer funds for inpatient detoxification treatment of general assistance recipients of the plaintiff, or permitting the city to enter into a contract with the plaintiff for such purposes. The mayor further testified that when he met with the head of the department in preparation of the 1994 budget, he instructed her not to refer patients to the plaintiff, and that when he became aware that patients were being referred, he directed the department to stop. Accordingly, when the plaintiff submitted a bill to the city for $215,527.14 for services provided, the city refused to pay.

The mayor of the city and the chief financial officer of the city testified that there had never been a line item in the budget for detoxification services payments to the plaintiff for general assistance recipients between the ages of twenty-one and sixty-five. There was, however, generalized money in both the 1991–92 and 1994–95 budgets for food, shelter and medically necessary services to general assistance recipients. Further, the mayor conceded that he delegated the authority to authorize expenditures from that generalized budget to the department, and that the head of the department delegated the authority to the department operations manager and caseworkers.

The attorney trial referee recognized that under the ordinary rules of contract, an agent who has apparent authority, but not express authority, can bind his principal, especially as to parties who act in good faith. The referee clearly found that the department caseworkers authorized the plaintiff's treatment of the forty general

assistance recipients of the city. The referee, however, added that caution is required when dealing with equally sophisticated entities entering into governmental contracts and, hence, she departed from ordinary contract law. The referee instead charged the plaintiff with "knowledge of the proper procedure by which municipal employees can bind the city to its actions," and held that the department employees lacked apparent authority to approve the admissions and to agree to pay for the medical services that the plaintiff provided to the general assistance recipients. The salient issue here, therefore, is whether the department caseworkers had the apparent authority to bind the city. We conclude that they did.

"Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. . . . Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal." (Citations omitted; internal quotation marks omitted.) *Tomlinson* v. *Board of Education*, 226 Conn. 704, 734, 629 A.2d 333 (1993). "The issue of apparent authority is one of fact, requiring the trier of fact to evaluate the conduct of the parties in light of all the surrounding circumstances. . . . Only in the clearest of circumstances, where no other conclusion could reasonably be reached, is the trier's determination of fact to be disturbed." (Internal quotation marks omitted.) *Edart Truck Rental Corp.* v. *B. Swirsky & Co.*, 23 Conn. App. 137, 140, 579 A.2d 133 (1990).

"The issue of apparent authority is . . . to be determined based on two criteria. . . . First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. . . . Second, the party dealing with the agent must have, acting in good faith,

reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." (Citations omitted; internal quotation marks omitted.) *Tomlinson* v. *Board of Education*, supra, 226 Conn. 734–35. The doctrine of apparent authority was developed by the courts to protect third parties who deal with agents who lack express authority. *Edart Truck Rental Corp.* v. *B. Swirsky & Co.*, supra, 23 Conn. App. 140. "Apparent authority may be derived from a course of dealing." Id.

"Apparent authority terminates when the third person has notice that: (1) the agent's authority has terminated; (2) the principal no longer consents that the agent shall deal with the third person; or (3) the agent is acting under a basic error as to the facts. . . . Unless otherwise agreed, there is a notification by the principal to the third person of revocation of an agent's [apparent] authority or other fact indicating its termination: (a) when the principal states such fact to the third person; or (b) when a reasonable time has elapsed after a writing stating such fact has been delivered by the principal (i) to the other personally . . . . In addition, the principal can properly give notification of the termination of the agent's authority by . . . giving publicity by some . . . method reasonably adapted to give the information to such third person." (Citations omitted; internal quotation marks omitted.) *Tomlinson* v. *Board of Education*, supra, 226 Conn. 735.

Application of these general principles to the facts of this case reveal that the legal conclusion of the attorney trial referee, which was adopted by the court, that the department did not have apparent authority to bind the city to the contract with the plaintiff is not supported by the evidence and is legally incorrect. The referee relies primarily on the city's charter to conclude that there was no budget line item from which the plaintiff could have been paid, and on *Norwalk* v. *Board of Labor*

*Relations,* 206 Conn. 449, 452, 538 A.2d 694 (1988), to charge the plaintiff, as a matter of law, with knowledge of how municipal employees under the city's charter may bind the city.

First, with respect to the referee's conclusions regarding the city's charter, she failed to find certain uncontested facts relevant to this issue. The mayor testified that there had never been a line item in the budget for detoxification services payments to the plaintiff, and yet the city paid the plaintiff for services in 1991 and 1992. The mayor further testified that there was money in both the 1991–92 and the 1994–95 budgets for food, shelter and medical services to general assistance recipients, and that the department authorized expenditures of those funds. It would be reasonable for the plaintiff to have concluded, therefore, that the same budget mechanism by which the city paid for the 1991–92 services would be available to pay for the services provided in 1994 and 1995. The referee's conclusion that the city's charter did not permit department caseworkers to authorize admission of, and payment for, general assistance recipients to receive detoxification services from the plaintiff is not supported by the uncontested evidence. Instead, it appears that it was an internal policy decision of the mayor's office to discontinue referrals to private freestanding providers like the plaintiff that deprived the department of actual authority to make the referrals.

Given these facts, the referee's reliance on *Norwalk* v. *Board of Labor Relations,* supra, 206 Conn. 449, is misplaced. In that case, the court charged the plaintiff with knowledge of the mechanism by which the municipal corporation may reinstate a discharged police officer because the procedures for reinstatement clearly were made public by the city charter as well as by statute. In that case it was reasonable for the court to expect the plaintiff, the board of labor relations, to have

knowledge of the required procedures. In the present case, however, the mechanism that prevented the social service caseworkers from authorizing the challenged payment to the plaintiff was a purely internal policy of which the plaintiff had no knowledge. In fact, the plaintiff reasonably relied on an extensive history of prior payments for the same services authorized in the same manner. The authority under which the department agents previously authorized payment to the plaintiff, whether it be actual or apparent, was never properly revoked.

Furthermore, in *Norwalk* v. *Board of Labor Relations*, supra, 206 Conn. 453, the court's conclusion that the city could not be bound by a settlement agreed to by the city attorney sent to negotiate with the labor board merely required the parties to return to the negotiation process and did not, in fact, leave the plaintiff in a worse position due to its reliance on the agreement. Conversely, in the present case, the plaintiff relied in good faith on the authorization of the department agents to its detriment. The plaintiff has already provided the services to the general assistance recipients and the city is therefore equitably estopped from now claiming that the contract was invalid. See *Pepe* v. *New Britain*, 203 Conn. 281, 294, 524 A.2d 629 (1987) (where "benefits have . . . been conferred upon [a municipal defendant], it would not be just to allow the defendant to escape its obligation to compensate the plaintiffs for the reasonable value of their services by asserting that their retention had not been in accordance with required formalities").

The court should not have accepted the report of the referee because it recommended a judgment that is legally and logically inconsistent with the subordinate facts found. As a result, we must vacate the judgment of the court.

The judgment is reversed and the case is remanded with direction to render judgment rejecting the report of the attorney trial referee and for further proceedings in compliance with Practice Book § 19-17 (a).

In this opinion the other judges concurred.