[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Carlos Gomez, appeals from the final decision of a hearing officer of the defendant, Connecticut Commission on Human Rights Opportunities ("CHRO"), dismissing the plaintiffs complaint against the defendant, Connecticut General Life Insurance Company ("CG"), the plaintiffs former employer. The plaintiffs underlying CHRO complaint alleged that the plaintiff was wrongfully terminated because of discrimination based upon his national origin (Cuban) and in retaliation for his filing a complaint with the CHRO regarding his supervisor.
The hearing officer, on June 30, 1999, made the following findings of fact which may be summarized as follows:
1. The plaintiff, a nineteen year employee of CG, worked as a driver for the bulk of his tenure, and was so employed at the time of his termination in 1996.
2. While the plaintiff received satisfactory performance appraisals, a number of evaluations noted that the plaintiff had difficulty working with both coworkers and management, and needed to improve his skills in those working relationships.
3. In 1995, the plaintiff received a warning memo for making inappropriate comments of a sexual nature to a coworker.
4. In 1996, a confrontation occurred between the plaintiff and a coworker where the plaintiff made some passing threat to the coworker about knocking him down.
5. The plaintiff reported the incident to the CG security department, placing blame for the incident on the coworker[1] and the plaintiff's allegations were investigated.
6. The plaintiff also made a complaint to the Bloomfield Police. The police concluded that there was no probable cause for a complaint against the coworker. The plaintiff accused the police investigator of failing to act on his complaint because of his national origin. The police investigator countered that he had enough information to charge the plaintiff with having made a false complaint.
7. Shortly after this incident, the plaintiffs supervisor sent the plaintiff a warning letter advising the plaintiff that making a false statement violated CG's conduct of employee policy. The plaintiff was CT Page 9649 warned that further improper behavior would result in termination.
8. At the same time that the investigation by the Bloomfield Police was being completed, the plaintiff had another confrontation with his supervisor over a new procedure on vacation schedules. The plaintiff claimed that the supervisor's statements during this argument were discriminatory and the plaintiff decided to send a complaint to CHRO. He signed a complaint, but did not immediately file the complaint. At the time of the plaintiffs termination, CG was unaware of the plaintiffs complaint[2].
9. On August 20, 1996, the plaintiff was driving his company van on the CO property in Bloomfield and hit one of the Canadian geese that congregate on the CG property. One or more of CG employees witnessed at least some portion of this event. While the plaintiff did not immediately stop, he report the incident shortly thereafter to security personnel. A witness to the accident believed that the plaintiff had intentionally run over the goose with his van. The witness reported the incident to CG security and an investigation was conducted. CO security rejected the plaintiffs claim that he had hit the goose accidentally and determined that the plaintiff had intentionally misused his vehicle.
10. Information concerning the alleged misuse of company property was provided to an assistant vice president of the Human Resources Department of CO. A review of the goose incident as well as the plaintiffs work history and past incidents led the human resources officer, in consultation with the CG legal staff, to the conclusion that termination was appropriate. On August 28, 1996, CG officials met with the plaintiff and informed him that he was being terminated for "inappropriate behavior and incidences of misconduct."
(ROR, Volume 1, Item 4.)
Based upon these findings, the hearing officer dismissed the plaintiffs complaint, concluding that even if the plaintiff had established a prima facie case of national origin discrimination and/or retaliation, CG had proven acts of misconduct for which the plaintiff had been previously warned, and ultimately the intentional misuse of a company vehicle. Thus, CG had shown a legitimate, nondiscriminatory reason for the termination. The hearing officer also concluded that CG's investigation of the goose incident was proper; and therefore, the plaintiffs situation was distinguishable from another situation where a driver accidentally hit a swan and was not terminated from employment.
The plaintiff has appealed to this court from the administrative decision and the court finds that the plaintiff is aggrieved.[3] In the CT Page 9650 present administrative appeal, the plaintiff raises two issues: first, whether the CHRO hearing officer improperly restricted the plaintiffs discovery of relevant materials from CG; and, second, whether the CHRO correctly met its statutory duty to hold conciliation proceedings.
After a complaint is certified by the executive director of the CHRO for a hearing, a hearing conference is required to be held under General Statutes § 46a-84(b). Under § 46a-54-96(a) of the Regulations of Connecticut State Agencies, the hearing commences with a hearing conference, at which such topics as discovery are considered. Further under § 46a-54-98 of the Regulations of Connecticut State Agencies, the parties are entitled to inspect and copy relevant and material evidence held by another party. Pursuant to the statute and regulations, status conferences were held with the hearing officer to discuss discovery. (ROR, Volume 2, Item 79, p. 19.)
Based on these conferences, the plaintiff[4] filed interrogatories and requests for production dated May 21, 1998, in part seeking production off "all documents concerning any traffic violations committed by any of Respondent's Connecticut employees... (Supplemental Return of Record, Item 1, p. 11, ¶ 21.) On July 22, 1998, CG objected to this request on confidentiality grounds. (Supplemental ROR, Item 2, p. 10, ¶ 21.) Subsequently, after a motion to compel, CG located two instances where employees were involved in traffic violations while driving for the company. (ROR, Volume 2, Item 79, p. 20.)
At the commencement of the taking of evidence on January 12, 1999, the hearing officer ordered that CG turn over to the plaintiff the files on these two incidents, so that the plaintiff could compare the discipline received by these individuals with his own. (ROR, Volume 2, Item 79, p. 8.) At the same time, the hearing officer also was asked to resolve a subpoena issued by the plaintiffs attorney to CG two business days before the January 12th session. The subpoena sought that CG turn over "all incident reports and security statements regarding driving accidents involving any employees in the transportation and mail services departments. . . from January 1, 1986 through December 31, 1996."[5]
(ROR, Volume 1, Item 20.)
CG made a motion to quash the plaintiffs subpoena, claiming the subpeona was untimely, unduly burdensome and would not lead to the discovery of relevant information. (ROR, Volume 1, Item 20.) After oral argument, the hearing officer ruled as follows: "But isn't this sort of an eleventh hour thing? I mean we've had several status conferences here where we could have requested that subpoenas issue or we could have sort of tailored the — I mean we discussed the length, as I remember, how we were going to tailor the various Discovery and the Responses CT Page 9651 thereto. . . . and I'm not so sure in good faith that I can require the Respondent to comply with that subpoena." (ROR, Volume 2, Item 79, at pp. 19-20.)
The hearing officer continued: "I will quash the subpoena. I will do so, again, without prejudice to rehashing this issue, depending upon the nature of the testimony and how the matter goes and some determination of what may or may not be relevant here." (ROR, Volume 2, Item 79, p. 23.) This ruling by the hearing officer forms the basis of the plaintiffs first point of error on appeal, specifically that the plaintiff did not receive a fair hearing without the incident reports being produced.
This ground of appeal is tested under the familiar rule that "[t]he burden is on the plaintiff to prove that the evidentiary ruling of an administrative hearing officer is arbitrary." Griffin v. Muzio,10 Conn. App. 90, 93, cert. denied, 203 Conn. 805 (1987). A review of the transcript of the hearing before the CHRO, as quoted in part above, indicates that the plaintiff has not met his burden. First the hearing officer did not categorically refuse the plaintiffs subpoena request.[6]
Rather, the hearing officer quashed the subpoena without prejudice with the possibility of the issue being raised again later in the hearing. The plaintiff, however, never renewed the production request.
The plaintiff called as a witness a former employee of CG, who had an accident with a swan while backing into a driveway in one of CG's other locations in Connecticut. (ROR, Volume 2, Item 79, p. 139.) The plaintiff also had an opportunity to cross examined his supervisor regarding other incidents involving willful misuse of company property. (ROR, Volume 5, Item 82, p. 639.) He also cross examined his supervisor about two incidents in which temporary employees were driving recklessly and were summarily terminated. (ROR, Volume 5, Item 82, pp. 639-40.) At this time, the initial ruling of the hearing officer was referred to again, but no effort was made to renew the issue for reconsideration. (ROR, Volume 5, Item 82, p. 643.)
Therefore, the court concludes that the plaintiff had an opportunity to pursue the issue of similar incidents through questioning of his own witness and through cross examination of his supervisor. The subpoena ruling, left partially open by the hearing officer, was not pursued by the plaintiff and accordingly was waived. The court has previously noted that when a party elects not to press an evidentiary ruling of a hearing officer, this will amount to a waiver of the claim. Michael v. Commissionon Human Rights Opportunities, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 353588 (June 12, 2000, Cohn, J.); see also O'Sullivan v. DelPonte, 27 Conn. App. 377, 385 (1992) (failure to request continuance indicated willingness to proceed with administrative CT Page 9652 hearing).
In addition, the hearing officer correctly concluded that the documents, if produced, would not have assisted the plaintiff. The hearing officer found that the plaintiff was terminated for a series of problems at work. The voluminous collection of documents about accidents or incidents involving CG drivers would not have changed the result in the plaintiffs case. Therefore, the hearing officer's ruling was appropriate. Griffin v. Muzio, supra, 10 Conn. App. at 93.
The second issue raised by the plaintiff concerns the CHRO's duty to conciliate. The plaintiff contends that the CHRO did not allow for "hard mediation" before proceeding to the hearing.
By statute, after a finding of reasonable cause to believe that a discriminatory practice has been committed, "an investigator shall attempt to eliminate the practice complained of by conference, conciliation and persuasion within fifty days. . . General Statutes § 46a-83(f). In addition, if an investigator fails to achieve a settlement in the conciliation process, and a hearing officer is appointed, there mast be a hearing conference within forty-five days from the appointment of the hearing officer. General Statutes § 46-84(b).
In this case, efforts at conciliation occurred. In its brief; CG represents that the conciliation meeting occurred on August 5, 1997 in conjunction with a fact-finding conference. (Brief for Connecticut General Life Insurance Company, p. 13.) This date does not appear in the record. There are, however, numerous references in the record to conciliation efforts by the hearing officer after his appointment. (ROR, Volume 1, Items 43, 59; ROR, unnumbered letter of May 21, 1998.) These show that the hearing officer made an "attempt" to bring the parties together. This is all that is required by law. Ames Department Stores,Inc. v. Commission on Human Rights Opportunties, 45 Conn. Sup. 276,281, aff'd, 48 Conn. App. 561, cert. denied, 245 Conn. 924 (1998).
Accordingly, the plaintiff's appeal is hereby dismissed.