## HOUSING AUTHORITY OF THE CITY OF NEW LONDON *v.* STATE BOARD OF LABOR RELATIONS*

Superior Court, Judicial District of New Britain—File No. CV010510353

---

* Affirmed. *Housing Authority* v. *State Board of Labor Relations*, 76 Conn. App. 194, 819 A.2d 296 (2003).

Memorandum filed November 26, 2001

*Susan M. Phillips*, for the plaintiff.

*Lisa S. Lazarek*, assistant general counsel, for the defendant.

SCHUMAN, J. The plaintiff, the housing authority of the city of New London (housing authority), appeals from the decision of the defendant state board of labor relations (labor board), ordering the housing authority to comply with a collective bargaining agreement provision governing unused sick leave. For the following reasons, the court dismisses the appeal.

## BACKGROUND OF THE CASE

After hearings in 1998, the labor board found the following facts. In late 1993 or early 1994, the housing authority and Locals 1303-171 and 1303-287 of Council 4, American Federation of State, County and Municipal Employees, AFL-CIO (union), engaged in negotiations for collective bargaining agreements to succeed those expiring on December 31, 1993. It was the practice of the negotiators to submit tentative agreements to the union membership and to the housing authority board of commissioners, respectively, for ratification after which a full contract would be finalized and signed.

Among the provisions of the proposed agreement reached by the negotiators on February 17, 1994, was § 9.2, which states: "Effective upon retirement, an employee shall be paid sixty percent (60%) of his/her accumulated unused sick leave." Section 9.2, however, was omitted from a copy of the draft agreement mailed on February 23, 1994, by the union's representative, Mickey Busca, to the housing authority's executive director and chief negotiator, Dorislee Carpenter. The board of commissioners discussed the negotiations in executive session on February 28, 1994. At some time prior to March 25, 1994, Carpenter polled four commissioners by telephone and received ratification of the proposed contracts by them. It is unknown whether the commissioners had actually seen the draft contracts or whether Carpenter had discussed § 9.2 with the four commissioners who she polled. Carpenter executed the agreements, without § 9.2, on or about March 25, 1994.

The members of the union ratified the collective bargaining agreements on March 17, 1994. Upon discovering the omission of § 9.2, the union prepared a memorandum of agreement (memorandum) providing that the agreement inadvertently had omitted § 9.2 and that the agreement was amended to include that section. The memorandum was discussed at the June 20, 1994 meeting of the board of commissioners, but no action was taken. On June 27, 1994, Carpenter, on behalf of the housing authority, executed the memorandum with Local 171.

On November 27, 1995, the housing authority denied the claim of a retiring Local 287 member for payment of 60 percent of her unused sick leave on the ground that § 9.2 did not appear in the collective bargaining agreement. Local 287 filed a complaint with the labor board on April 11, 1996, alleging that the housing authority had violated the Municipal Employee Relations Act, General Statutes § 7-407 et seq., by failing to honor

§ 9.2. The labor board permitted the amendment of the complaint to add Local 171, which made essentially the same allegations.

The labor board concluded on August 6, 1999, that the memorandum represented a valid agreement between the housing authority and Local 171, and that the housing authority had repudiated the agreement by not honoring § 9.2. A two member majority of the labor board ruled that Carpenter had apparent authority to act on behalf of the housing authority. The majority found that "the housing authority held out Carpenter as their designated representative for purposes of bargaining and . . . the union had good reason to rely on Carpenter's actions as being valid actions on behalf of the housing authority." A third member concurred with the result on the ground that Carpenter had actual authority to sign the memorandum. The labor board also concluded that the housing authority and Local 287 did not have a valid agreement concerning § 9.2 because that section was not included in the collective bargaining agreement between the parties and there was no evidence that Carpenter had signed a memorandum with Local 287.

On August 18, 1999, the union filed a motion for reconsideration, asserting that it had located a copy of the memorandum between Local 287 and the housing authority. The labor board granted the motion for reconsideration. After another hearing, the labor board found the following additional facts. A union official had received the original memorandum in 1995, but had been unable to find either an original or a copy in preparation for the 1998 hearings. After the labor board rendered its initial decision on August 6, 1999, the union official asked representatives of Local 287 for the first time whether they had a copy. The copy produced by that request served as the basis for the motion for reconsideration. The copy of the Local 287 memorandum is

virtually identical to the copy of the memorandum with Local 171 that the labor board had relied on in rendering its initial decision. The Local 287 memorandum copy bears a signature that appears to be that of Carpenter, whose whereabouts were unknown at the time of the renewed hearing.

On the basis of those facts, the labor board concluded that the housing authority had entered into a memorandum concerning § 9.2 not only with Local 171, but also with Local 287. The labor board found that other than the "timing of the discovery of the copy of the agreement," there was "simply no evidence or indication that the document produced at th[e] hearing is not what it purports to be." The labor board added that the document "constitutes newly discovered evidence, and the union has adequately explained its reasons for not producing the document during the initial hearing in this matter." Accordingly, the labor board concluded that the housing authority had repudiated its agreement with Local 287 and imposed sanctions.

The housing authority appealed to this court from both the initial and the modified decisions. The court, *Martin, J.,* dismissed the appeal concerning Local 171's agreement as untimely. This appeal accordingly concerns only the validity of the agreement with Local 287.

## DISCUSSION

### I

The housing authority initially contends that the labor board erred in granting the motion for reconsideration. The labor board relied on General Statutes § 4-181a (a) (1) (B), which provides for reconsideration when "new evidence has been discovered which materially affects the merits of the case and which for good reasons was not presented in the agency proceeding . . . ." This court reviews the agency's decision on a motion to

reconsider to determine whether there was an abuse of discretion. See generally *Barzetti* v. *Marucci*, 66 Conn. App. 802, 808, 786 A.2d 432 (2001).

There can be no dispute that the union's production of the copy of the memorandum was "new evidence [that] has been discovered which materially affect[ed] the merits of the case . . . ." General Statutes § 4-181a (a) (1) (B). In the initial decision, the labor board decided in favor of Local 171 but against Local 287 solely because neither the union nor the housing authority had produced a copy of the Local 287 memorandum. It was reasonable for the labor board to entertain a request to rectify this disparate result based on the claimed production of the document that went to the heart of the matter.[1]

The closer question is whether the copy "for good reasons was not presented in the agency proceeding . . . ." General Statutes § 4-181a (a) (1) (B). Although the evidence revealed that the union was probably negligent in not producing the copy of the memorandum at the time of the initial hearing, there is no evidence that the union intentionally delayed the production of the document, and there was no reason for it to have done so. It was for the board to decide whether this negligence amounted to "good reasons." The labor board specifically found that "the union [had] adequately explained *its* reasons for *not* producing the document during the initial hearing in this matter." In this gray area, this court cannot say that the labor board abused its discretion in making this finding and in granting the motion to reconsider.

---

[1] The labor board nevertheless noted in its initial decision that "there is considerable fault to be found with both parties for causing this dispute." The labor board faulted the union for omitting § 9.2 from the collective bargaining agreement it drafted and for failing to call Busca as a witness. The labor board criticized the housing authority for the fact that its minutes did not reflect discussion of the memorandum and for the fact that it did not call Carpenter as a witness.

## II

The housing authority also maintains that the labor board improperly admitted the copy of the memorandum with Local 287 into evidence at the hearing on the underlying merits of the motion to reconsider. The housing authority relies on General Statutes § 4-178 (4), which provides that in all contested cases, "documentary evidence may be received in the form of copies or excerpts, if the original is not readily available, and upon request, parties and the agency conducting the proceeding shall be given an opportunity to compare the copy with the original . . . ."

This section reflects the law that administrative agencies are not strictly bound by technical rules of evidence. *Hickey* v. *Commissioner of Motor Vehicles*, 170 Conn. 136, 141, 365 A.2d 403 (1976). Rather, agencies may consider exhibits that would normally be incompetent in a judicial proceeding as long as the evidence is reliable and probative. See *O'Sullivan* v. *DelPonte*, 27 Conn. App. 377, 381–82, 606 A.2d 43 (1992). The plaintiff bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion. Id., 382.

The plain language of § 4-178 (4) authorizes the admission of a copy "if the original is not readily available . . . ." That was the case with the original here. Even if one interprets "not readily available" to mean not readily available " 'for some reason other than the serious fault of the proponent' "; *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 10, 513 A.2d 1218 (1986); as is the case in applying the best evidence rule; id.; the result would not differ. Essentially, the labor board found that the union had misplaced the original sometime after receiving it in 1995. There was no finding, or basis for a finding, that the union had intended to destroy or to conceal the original. Thus,

because the original was "not readily available" " 'for some reason other than the serious fault of the proponent' "; id.; admission of the copy was proper under § 4-178 (4).

The plaintiff also relies on the second part of § 4-178 (4), which provides in relevant part that "upon request, parties and the agency conducting the proceeding shall be given an opportunity to compare the copy with the original . . . ." The housing authority did make such a request. Obviously, the comparison could not take place because the union had lost the original.

The second part of the statute does not specifically address this situation. To apply a per se rule of exclusion, as the plaintiff advocates, would run counter to the notion that administrative agencies may relax the rules of evidence and consider any materials that are reliable and probative. Instead of a strict exclusionary rule, the court relies on the general rule that the plaintiff bears the burden of proving that the hearing officer's evidentiary ruling was arbitrary, illegal or an abuse of discretion. The labor board's admission of the copy of the memorandum did not mean that the labor board automatically credited the document. The labor board expressed concern about the late discovery of the copy, but ultimately concluded that there was "simply no evidence or indication that the document produced at th[e] hearing is not what it purports to be." In view of the fact that the copy of the Local 287 memorandum was virtually identical to the copy of the Local 171 memorandum, that neither party could produce any of the originals and that there was no evidence that the union had intended to conceal or destroy the original, the housing authority cannot prove that the labor board's admission of the copy of the Local 287 memorandum was arbitrary, illegal or an abuse of discretion. See *O'Sullivan* v. *DelPonte,* supra, 27 Conn. App. 382.

## III

On the merits, the housing authority initially argues that the Municipal Employee Relations Act does not allow for the addition of contract terms requiring fiscal appropriation, such as the memorandum in this case, after a municipality has ratified a collective bargaining agreement. The housing authority does not cite any provision that specifically expresses this prohibition. Instead, the housing authority relies on its own interpretation of a portion of subsection (b) of General Statutes § 7-474. That subsection provides in relevant part that "the bargaining representative of the municipality" shall submit a "request for funds necessary to implement [a] written [collective bargaining] agreement" to the "legislative body which may approve or reject such request as a whole by a majority vote of those present and voting on the matter; but, if rejected, the matter shall be returned to the parties for further bargaining. . . ."[2] General Statutes § 7-474 (b).

---

[2] General Statutes § 7-474 (b) provides: "Any agreement reached by the negotiators shall be reduced to writing. Except where the legislative body is the town meeting, a request for funds necessary to implement such written agreement and for approval of any provisions of the agreement which are in conflict with any charter, special act, ordinance, rule or regulation adopted by the municipal employer or its agents, such as a personnel board or civil service commission, or any general statute directly regulating the hours of work of policemen or firemen or any general statute providing for the method or manner of covering or removing employees from coverage under the Connecticut municipal employees' retirement system or under the Policemen and Firemen Survivors' Benefit Fund shall be submitted by the bargaining representative of the municipality within fourteen days of the date on which such agreement is reached to the legislative body which may approve or reject such request as a whole by a majority vote of those present and voting on the matter; but, if rejected, the matter shall be returned to the parties for further bargaining. Failure by the bargaining representative of the municipality to submit such request to the legislative body within such fourteen-day period shall be considered to be a prohibited practice committed by the municipal employer. Such request shall be considered approved if the legislative body fails to vote to approve or reject such request within thirty days of the end of the fourteen-day period for submission to said body. Where the legislative body is the town meeting, approval of the agreement by a majority of the selectmen shall make the agreement valid

Even if this court credited the expansive interpretation of § 7-474 (b) advanced by the housing authority, the court would find that subsection (b) does not apply to this case. The portion of subsection (b) relied on by the housing authority stands in contrast to subsection (d) of § 7-474, which specifically governs negotiations between municipalities and employee representatives "[i]f the municipal employer is a . . . housing authority" as is the case here. Subsection (d) of § 7-474 provides in relevant part that "such . . . housing authority . . . or its designated representatives, shall represent such municipal employer in collective bargaining and shall have the authority to enter into collective bargaining agreements with the employee organization which is the exclusive representative of such employees . . . and no such agreement or any part thereof shall require approval of the legislative body of the municipality."[3] (Emphasis added.) Subsections (b) and (d) obviously conflict because (b) requires submission of a contract term requiring fiscal appropriation to the municipal legislative body while (d) does not. Given this conflict, the specific authority applicable to housing

and binding upon the town and the board of finance shall appropriate or provide whatever funds are necessary to comply with such collective bargaining agreement."

[3] General Statutes § 7-474 (d) provides: "If the municipal employer is a district, school board, housing authority or other authority established by law, or is a private nonprofit corporation which has a valid contract with any town, city, borough or district to extinguish fires and to protect its inhabitants from loss by fire, which by statute, charter, special act or ordinance has sole and exclusive control over the appointment of and the wages, hours and conditions of employment of its employees, such district, school board, housing authority, other authority or corporation, or its designated representatives, shall represent such municipal employer in collective bargaining and shall have the authority to enter into collective bargaining agreements with the employee organization which is the exclusive representative of such employees, and such agreements shall be binding on the parties thereto, provided, where any provisions of any such agreement require federal approval, such provisions shall be binding upon receipt of such approval, and no such agreement or any part thereof shall require approval of the legislative body of the municipality."

authorities set forth in subsection (d) prevails over the more general authority contained in § 7-474 (b). See *Gifford* v. *Freedom of Information Commission*, 227 Conn. 641, 652–53, 631 A.2d 252 (1993).[4]

The main issue on the merits is whether Carpenter had actual or apparent authority to sign the memorandum with Local 287. It is not clear whether Carpenter, as executive director, had actual authority to bind the housing authority. It is true that § 7-474 (d) permits a housing authority "or its designated representatives" to represent and bind the authority in collective bargaining. But the housing authority's bylaws provide that "[e]xcept as otherwise authorized by resolution of the Authority, the Chairman [of the housing authority] shall sign all contracts, deeds, and other instruments made by the Authority." It thus appears that the chairman, rather than the executive director, was the "designated representative" who had authority to bind the housing authority. The housing authority, however, did not introduce the bylaws in the proceedings below. Given that fact, the concurring member of the labor board cannot be faulted for finding that Carpenter did have actual authority.

The labor board majority's finding that Carpenter had apparent authority represents a mixed conclusion of law and fact. Such a conclusion requires application of the legal standards governing apparent authority, which involve questions of law, to the historical facts of the case, which are questions of fact. See *Monterose* v. *Cross*, 60 Conn. App. 655, 659, 760 A.2d 1013 (2000); cf. *Hall-Brooke Foundation, Inc.* v. *Norwalk*, 58 Conn.

[4] As the labor board also points out, if General Statutes § 7-474 (b) applied, then the Local 287 memorandum would have become effective by operation of law, given that "the legislative body [of the municipality] fail[ed] to vote to approve or reject such request within thirty days of the end of the fourteen-day period for submission to said body." See footnote 2. Surely, the housing authority does not intend this result.

App. 340, 345, 752 A.2d 523 (2000); see generally *State v. Cobb*, 251 Conn. 285, 357–58, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). This court reviews such a finding to determine whether there is "substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) *Schallenkamp* v. *DelPonte*, 229 Conn. 31, 40, 639 A.2d 1018 (1994).

Apparent authority is "that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." (Internal quotation marks omitted.) *Hall-Brooke Foundation, Inc.* v. *Norwalk*, supra, 58 Conn. App. 345. The rules that govern the determination of apparent authority in an agent accordingly require an examination of the acts of the principal, rather than the agent. Id. "First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. . . . Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." (Internal quotation marks omitted.) Id., 345–46. The parameters of this doctrine, however, are sharply circumscribed when the principal is a municipal corporation. *Norwalk* v. *Board of Labor Relations*, 206 Conn. 449, 452, 538 A.2d 694 (1988).

The labor board explicitly applied these principles in a detailed opinion. As the labor board noted, Carpenter was the only negotiator for the housing authority at the bargaining table and, as executive director, was the highest ranking housing authority staff member.

Although the parties had historically submitted tentative collective bargaining agreements to their respective parties for review and ratification, in this case the housing authority commissioners submitted to a telephone poll without a formal ratification vote at a duly called meeting. Carpenter then signed the collective bargaining agreement as the sole signatory for the housing authority. There is no evidence that thereafter, the housing authority took any action to rescind or to negate Carpenter's approval of the agreement.

With knowledge of Carpenter's lead role in the process leading to the collective bargaining agreement fresh in their minds, the commissioners discussed the proposed memorandum on June 20, 1994. They took no action to prevent Carpenter from signing it. Carpenter did so seven days later.

In view of these facts, the labor board's conclusion that Carpenter had apparent authority to sign the memorandum is a reasonable one. The facts do not paint a picture of Carpenter as a rogue employee acting completely on her own. Rather, the facts reveal that the housing authority knowingly sent Carpenter to the bargaining table as their exclusive representative, informally approved her actions in signing the collective bargaining agreement on her own and at least acquiesced in her signature of the memorandum. It is fair to conclude, under those circumstances, that the housing authority held Carpenter out as having authority to act on their behalf.

These same facts also make it appropriate to conclude that the union had a good faith belief in Carpenter's authority. The only possible point to the contrary is the fact that the housing authority's bylaws repose authority to sign contracts in the chairman. This authority is not without exception, however, but rather exists only if not "otherwise authorized by resolution of the

Authority." In any case, given that the bylaws were not even part of the evidence before the labor board, the bylaws seem too obscure to charge the union with notice of them. On the whole, the conclusion that the union had a good faith belief in Carpenter's authority to represent the housing authority is a reasonable one.

This case differs from *Norwalk* v. *Board of Labor Relations*, supra, 206 Conn. 449, in which the Supreme Court held that a city attorney and one police commissioner did not have apparent authority to bind the city to reinstating a discharged police officer. In that case, the city charter specifically provided that the concurrence of two of the three police commissioners was necessary to transact business and the charter, as well as the Freedom of Information Act, General Statutes (Rev. to 1983) §§ 1-7 through 1-21k, now §§ 1-200 through 1-240, required that the commission take action only at a public meeting. *Norwalk* v. *Board of Labor Relations*, supra, 452. In the present case, the housing authority's bylaws are neither as prominent nor as unequivocal. Further, the present case involves the unique situation in which, just prior to the signing of the memorandum, the union had completed negotiations on a collective bargaining agreement with the top staff member of the housing authority without receiving any indication from the housing authority that that top staff member did not have authority to represent them. In contrast, in the Norwalk case, the police commission formally rejected the proposed reinstatement as soon as it learned of its terms. Id., 450, 453.

## CONCLUSION

The housing authority having failed to sustain the grounds for its appeal, the appeal is dismissed.