LINDA LABENSKI *v.* LOUIS GOLDBERG, COMMISSIONER OF MOTOR VEHICLES
(12221)

FOTI, LANDAU and HEIMAN, Js.

Argued January 11—decision released March 15, 1994

*Lawrence W. Berliner,* for the appellant (plaintiff).

*Jane Rosenberg,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Alan N. Ponanski,* assistant attorney general, for the appellee (defendant).

HEIMAN, J. The plaintiff appeals from the judgment of the trial court affirming the decision of the commissioner of motor vehicles suspending her license. On appeal, the plaintiff claims that the trial court improperly (1) found that the defendant's reliance on hearsay evidence constituted reliable, probative and substantial evidence necessary to support the defendant's findings of fact and legal conclusions, (2) concluded that the plaintiff's substantial rights under the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; were not prejudiced by the defendant's decision to impose a license suspension of an unlimited duration, (3) found that the defendant's actions and decisions did not deprive the plaintiff of due process and equal protection of the laws, and (4) found that the defendant's summary licensing suspension was moot. Because we agree with the plaintiff's first claim, we reverse the judgment of the trial court.

The following facts are necessary for a proper resolution of this appeal. The plaintiff suffers from an idiopathic seizure disorder. John Hornblow, a neurologist, warned the plaintiff on multiple occasions not to operate a motor vehicle because of the disorder. On April 24, 1991, the plaintiff was injured in a motor vehicle accident. After the accident, she was treated by Melissa Klaus, an emergency room physician employed by Manchester Memorial Hospital, for a mouth laceration and facial contusions. On May 1, 1991, Klaus sent a report[1]

---

[1] The report sent to the department of motor vehicles was in the form of a letter. Since the hearing officer treated the letter as a medical report, we will refer to the letter as a report.

to the department of motor vehicles informing them that she believed the accident was the result of the plaintiff's loss of consciousness due to a seizure. Klaus also stated in the report that she admonished the plaintiff not to drive and that part of her information concerning the plaintiff was obtained through a conversation with Hornblow.

On May 28, 1991, the department of motor vehicles informed the plaintiff that her driver's license would be suspended on June 8, 1991, pursuant to General Statutes § 14-111 (a),[2] because her medical condition made the "continued operation of a motor vehicle . . . dangerous to [her] and others." The plaintiff requested a hearing to challenge the suspension.

On October 2, 1991, the department notified the plaintiff that the hearing was scheduled to occur on November 7, 1991. The notice stated that (1) the purpose of the hearing was to determine if she met "the minimum physical standards to operate a motor vehicle safely on the highways of Connecticut," (2) she would have an opportunity to respond to the claim that she failed to meet the health standards, (3) she could be represented by an attorney, and (4) if it was decided after the hearing that she failed to meet the physical requirements to drive a motor vehicle safely, her license could be suspended or made subject to periodic medical reporting to ensure future fitness to drive. The notice did not mention Klaus' report to the department. At the November 7, 1991 hearing, Klaus' report was

[2] General Statutes § 14-111 (a) provides in pertinent part: "No provision of this chapter shall be construed to prohibit the commissioner from suspending or revoking any registration or any operator's license issued under the provisions of any statute relating to motor vehicles, or from suspending the right of any person to operate a motor vehicle in this state, or from suspending or revoking the right of any nonresident to operate, or the right to any operation of, any motor vehicle within this state, for any cause that he deems sufficient, with or without a hearing. . . ."

received into evidence. The plaintiff testified that she had not been under the care of Hornblow for seven years, she was taking medication prescribed by Hornblow for the seizure disorder at the time of the accident, the warnings from Hornblow about not driving occurred long ago, and she had been driving for thirty-six years. She also admitted to having a seizure disorder but doubted that a seizure caused the accident. The hearing officer suggested that she attempt to obtain a neurological report stating that she had been seizure free for at least six months and that the disorder was controlled by medication. The plaintiff did not obtain such a report.

On February 6, 1992, the hearing officer found that Klaus attributed the cause of the accident to a seizure experienced by the plaintiff, that the plaintiff's seizure disorder was poorly controlled by medication, that the disorder was a longstanding one, and that the plaintiff had been warned by her physician not to drive. The hearing officer further found that the plaintiff proffered no medical reports refuting the opinions of Hornblow and Klaus. On the basis of these findings, the hearing officer concluded that the plaintiff failed to meet the minimum physical standards for safe operation of a motor vehicle within the ambit of General Statutes § 14-36 (e),[3]

---

[3] General Statutes § 14-36 (e) provides in pertinent part: "If any applicant or operator license holder has any health problem which might affect such person's ability to operate a motor vehicle safely, the commissioner may require the applicant or license holder to demonstrate personally or otherwise establish that, notwithstanding such problem, he is a proper person to operate a motor vehicle, and he may further require a certificate of such applicant's condition, signed by a medical authority designated by him, which certificate shall in all cases be treated as confidential by the commissioner. A license, containing such limitation as the commissioner deems advisable, may be issued or renewed in any case, but nothing in this section shall be construed to prevent the commissioner from refusing a license, either limited or unlimited, to any person or suspending a license of a person whom he determines to be incapable of safely operating a motor vehicle. . . ."

and General Statutes §§ 14-46 through 14-46g.[4] The hearing officer ordered the plaintiff's driver's license suspended indefinitely and reinstated only upon the receipt of an "acceptable" neurological report.

On April 1, 1992, the plaintiff, pursuant to General Statutes § 4-183 (a),[5] appealed the decision to the trial court. The plaintiff claimed in the trial court that (1) the notice of the administrative hearing was inadequate and denied her due process of law, (2) the decision of the hearing officer was unsupported by substantial evidence, (3) the suspension ought to have been stayed until the final decision was rendered by the hearing officer, and (4) the suspension deprived the plaintiff of the equal protection of the laws guaranteed to persons with physical disabilities by the Connecticut constitution.

On February 17, 1993, the trial court affirmed the decision of the department. The trial court stated that the notice of the hearing did not deny the plaintiff due process because it satisfied the four requirements in General Statutes § 4-177 (b),[6] the decision was sup-

---

[4] General Statutes §§ 14-46 through 14-46g allow any physician to report to the commissioner the name of any person diagnosed by the physician to have periods of unconsciousness uncontrolled by medication. The statutes also establish a medical advisory board that is charged with assisting the commissioner in reviewing cases involving such impaired persons.

[5] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[6] General Statutes § 4-177 provides in pertinent part: "(a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

"(b) The notice shall be in writing and shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; and (4) a short and plain statement of the matters asserted. If the agency or party is unable to state the matters in detail at the time the notice is served, the

ported by substantial evidence, which consisted of Klaus' report and the testimony of the plaintiff, the issue of whether the suspension ought to have been stayed was moot, and the suspension did not deprive the plaintiff of the equal protection of the laws because the state has a compelling interest in highway safety and the decision of the hearing officer was narrowly tailored to protect that interest. This appeal followed.

The plaintiff first claims that the trial court improperly found that the hearsay evidence relied on by the defendant constituted reliable, probative and substantial evidence necessary to support the defendant's findings of fact and legal conclusions. The hearing before the department of motor vehicles is subject to the Uniform Administrative Procedure Act and the scope of review is very restricted. *Buckley* v. *Muzio*, 200 Conn. 1, 3, 509 A.2d 489 (1986); *Carlson* v. *Kozlowski*, 172 Conn. 263, 266, 374 A.2d 207 (1977); *Neri* v. *Powers*, 3 Conn. App. 531, 537, 490 A.2d 528, cert. denied, 196 Conn. 808, 494 A.2d 905 (1985). To prevail in this appeal, the plaintiff must prove "that substantial rights . . . have been prejudiced because" the decision to suspend her license to operate a vehicle in this state was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." General Statutes § 4-183 (j) (5); *Lawrence* v. *Kozlowski*, 171 Conn. 705, 713–14, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); *Vicino* v. *Zoning Board of Appeals*, 28 Conn. App. 500, 505, 611 A.2d 444 (1992). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn

initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished. . . ."

from those facts are reasonable." *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 216 Conn. 627, 639, 583 A.2d 906 (1990). The determination of whether substantial evidence exists is subject to de novo review by this court. *Rydingsword* v. *Liberty Mutual Ins. Co.,* 224 Conn. 8, 21, 615 A.2d 1032 (1992). "Substantial evidence exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred. . . ." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 219 Conn. 51, 57, 591 A.2d 1231 (1991); *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* supra, 216 Conn. 639.

The only evidence presented to the hearing officer that supported the contention that the plaintiff's idiopathic seizure disorder made her operation of a motor vehicle unsafe came from Klaus' report to the department of motor vehicles. The report is hearsay evidence. " 'Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein.' " *State* v. *Paulino,* 223 Conn. 461, 467, 613 A.2d 720 (1992); *Raino* v. *Supermarkets General Corp.,* 28 Conn. App. 56, 59, 609 A.2d 1047, cert. denied, 223 Conn. 924, 614 A.2d 825 (1992). The statements in the report were written out of court and were offered into evidence to establish the truth of the statement that the plaintiff should not drive in Connecticut because of her disorder. Hearsay evidence, however, is not, as a matter of law, inadmissible in the hearing. General Statutes § 4-178; *Tomlin* v. *Personnel Appeal Board,* 177 Conn. 344, 348, 416 A.2d 1205 (1979); *Carlson* v. *Kozlowski,* supra, 267; *Griffin* v. *Muzio,* 10 Conn. App. 90, 93–94, 521 A.2d 607, cert. denied, 203 Conn. 805, 525 A.2d 520 (1987). "Under the 'substantial evidence' rule, the erroneous admission of evidence will not invalidate an administrative order unless substantial preju-

dice is affirmatively shown." *Madow* v. *Muzio,* 176 Conn. 374, 382, 407 A.2d 997 (1978); *Carlson* v. *Kozlowski,* supra; *Griffin* v. *Muzio,* supra, 94; see General Statutes § 4-178 (3). "If hearsay evidence is insufficiently trustworthy to be considered 'substantial evidence' and it is the only evidence probative of the plaintiff's culpability, its use to support the agency decision would be prejudicial to the plaintiff, absent a showing . . . that the [plaintiff] knew it would be used and failed to ask the commissioner to subpoena the declarants." *Carlson* v. *Kozlowski,* supra.

We must first determine the trustworthiness of the hearsay evidence. "[A] written report by a licensed physician who has examined the claimant and who sets forth in [her] report [her] medical findings in [her] area of competence may be received as evidence in a . . . hearing and, despite its hearsay character and an absence of cross-examination, and despite the . . . testimony by the [plaintiff] may constitute substantial evidence supportive of a finding by the hearing [officer] adverse to the [plaintiff] . . . ." *Richardson* v. *Perales,* 402 U.S. 389, 402, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); see *Carlson* v. *Kozlowski,* supra; *Altholtz* v. *Dental Commission,* 4 Conn. App. 307, 311–12, 493 A.2d 917 (1985). The *Richardson* court concluded that the report constituted substantial evidence because, among other factors, the report was prepared by a practicing physician who had examined the plaintiff, the report was based on personal consultation and examination and rested on accepted medical procedures and tests, the report revealed a patient and careful endeavor by the examiner to ascertain the truth, and the report was written in the physician's field of specialized training. *Richardson* v. *Perales,* supra, 402–406.

The factors enunciated in *Richardson* are not present in Klaus' report. Klaus' report fails to demonstrate that she performed any neurological examination of the

plaintiff to determine if she had suffered a seizure. The report also makes clear that she based her opinion on a conversation with Hornblow, not on her own physical examination. The report further fails to show that Klaus attempted to ascertain whether the motor vehicle accident was in fact caused by the seizure. The report also fails to indicate when Hornblow last had professional contact with the plaintiff. Klaus is not a neurologist, but an emergency room physician and was writing concerning neurology, not her specialized field of training. Therefore, the report lacks the elements required to be considered sufficiently trustworthy to constitute substantial evidence.

We must next determine whether the hearsay evidence was the only probative evidence offered as to the plaintiff. At the hearing, the only evidence admitted was the testimony of the plaintiff and Klaus' report. The plaintiff's testimony was antithetical to the claim that the accident was related to a seizure. Although the plaintiff admitted to having been treated for a seizure disorder, she stated that she did not have a seizure prior to the accident. She also challenged the statements in Klaus' report as false, hearsay and not substantial evidence because Klaus did not perform a neurological examination to determine if she had suffered a seizure. Therefore, the report by Klaus was the only probative evidence offered as to the plaintiff.

We must next determine whether the department established that the plaintiff knew that the report would be introduced and that the plaintiff failed to request that the commissioner subpoena the declarant. The department, in its brief, states that the plaintiff knew the nature of the claim being addressed—that she was not in adequate physical condition to operate a motor vehicle. The department, to satisfy its burden, must show that "it is highly likely that the plaintiff knew"

that the report would be introduced at trial. *O'Sullivan* v. *DelPonte,* 27 Conn. App. 377, 384, 606 A.2d 43 (1992). In *O'Sullivan,* we stated that it was highly likely that the plaintiff knew that a police report would be introduced at the hearing. This case is distinguishable from *O'Sullivan.* In *O'Sullivan,* the evidence revealed that the police arrived at the accident scene to investigate. Upon investigating the accident, the police *must* make a report of the investigation. General Statutes § 7-282. The plaintiff in *O'Sullivan* knew that the report existed and, therefore, was highly likely to be introduced at the hearing. Here, there is no evidence that the plaintiff knew that Klaus wrote a report to the department. The report does not indicate that the plaintiff received a copy nor does it state that the plaintiff was informed that Klaus notified the department of the incident. Klaus was not required to report the plaintiff. See General Statutes § 14-46. No evidence established that the plaintiff knew that the report would be introduced at the hearing or even that it existed.

We thus conclude that there is no reliable, probative and substantial evidence in the administrative record to support the agency's findings of basic fact.[7]

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.

---

[7] Because of our disposition of the plaintiff's first claim, we do not reach the remaining issues.