## LINDA LABENSKI *v.* LOUIS GOLDBERG, COMMISSIONER OF MOTOR VEHICLES (14548)

Spear, Hennessy and Shea, Js.

Argued March 21—officially released June 25, 1996

*Lawrence W. Berliner*, for the appellant (plaintiff).

*Alan N. Ponanski*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

SPEAR, J. The plaintiff appeals from the decision of the trial court denying her motion for an award of costs

and attorney's fees after she successfully challenged the suspension of her driver's license by the defendant, the commissioner of motor vehicles (commissioner). The plaintiff requested fees and costs pursuant to General Statutes § 4-184a (b)[1] after this court held that the commissioner had suspended the plaintiff's license without substantial evidence. In this appeal, she claims that the trial court improperly found that the commissioner's decision to suspend the plaintiff's license, although made without substantial evidence, was made with substantial justification. We disagree with the plaintiff's claim and affirm the judgment of the trial court.

The facts necessary to resolve this appeal were set out in *Labenski* v. *Goldberg*, 33 Conn. App. 727, 638 A.2d 614 (1994). "The plaintiff suffers from an idiopathic seizure disorder. John Hornblow, a neurologist, warned the plaintiff on multiple occasions not to operate a motor vehicle because of the disorder. On April 24, 1991, the plaintiff was injured in a motor vehicle accident. After the accident, she was treated by Melissa Klaus, an emergency room physician employed by Manchester Memorial Hospital, for a mouth laceration and facial contusions. On May 1, 1991, Klaus sent a report to the department of motor vehicles informing them that she believed the accident was the result of the plaintiff's loss of consciousness due to a seizure. Klaus also stated in the report that she admonished the plaintiff not to drive and that part of her information concern-

---

[1] General Statutes § 4-184a (b) provides: "In any appeal by an aggrieved person of an agency decision taken in accordance with section 4-183 and in any appeal of the final judgment of the superior court under said section taken in accordance with section 51-197b, the court may, in its discretion, award to the prevailing party, other than the agency, reasonable fees and expenses in addition to other costs if the court determines that the action of the agency was undertaken *without any substantial justification.*" (Emphasis added.)

ing the plaintiff was obtained through a conversation with Hornblow.

"On May 28, 1991, the department of motor vehicles informed the plaintiff that her driver's license would be suspended on June 8, 1991, pursuant to General Statutes § 14-111 (a), because her medical condition made the 'continued operation of a motor vehicle . . . dangerous to [her] and others.' The plaintiff requested a hearing to challenge the suspension.

"On October 2, 1991, the department notified the plaintiff that the hearing was scheduled to occur on November 7, 1991. The notice stated that (1) the purpose of the hearing was to determine if she met 'the minimum physical standards to operate a motor vehicle safely on the highways of Connecticut,' (2) she would have an opportunity to respond to the claim that she failed to meet the health standards, (3) she could be represented by an attorney, and (4) if it was decided after the hearing that she failed to meet the physical requirements to drive a motor vehicle safely, her license could be suspended or made subject to periodic medical reporting to ensure future fitness to drive. The notice did not mention Klaus' report to the department. At the November 7, 1991 hearing, Klaus' report was received into evidence. The plaintiff testified that she had not been under the care of Hornblow for seven years, she was taking medication prescribed by Hornblow for the seizure disorder at the time of the accident, the warnings from Hornblow about not driving occurred long ago, and she had been driving for thirty-six years. She also admitted to having a seizure disorder but doubted that a seizure caused the accident. The hearing officer suggested that she attempt to obtain a neurological report stating that she had been seizure free for at least six months and that the disorder was controlled by medication. The plaintiff did not obtain such a report.

"On February 6, 1992, the hearing officer found that Klaus attributed the cause of the accident to a seizure experienced by the plaintiff, that the plaintiff's seizure disorder was poorly controlled by medication, that the disorder was a longstanding one, and that the plaintiff had been warned by her physician not to drive. The hearing officer further found that the plaintiff proffered no medical reports refuting the opinions of Hornblow and Klaus. On the basis of these findings, the hearing officer concluded that the plaintiff failed to meet the minimum physical standards for safe operation of a motor vehicle within the ambit of General Statutes § 14-36 (e), and General Statutes §§ 14-46 through 14-46g. The hearing officer ordered the plaintiff's driver's license suspended indefinitely and reinstated only upon the receipt of an 'acceptable' neurological report.

"On April 1, 1992, the plaintiff, pursuant to General Statutes § 4-183 (a), appealed the decision to the trial court. The plaintiff claimed in the trial court that (1) the notice of the administrative hearing was inadequate and denied her due process of law, (2) the decision of the hearing officer was unsupported by substantial evidence, (3) the suspension ought to have been stayed until the final decision was rendered by the hearing officer, and (4) the suspension deprived the plaintiff of the equal protection of the laws guaranteed to persons with physical disabilities by the Connecticut constitution.

"On February 17, 1993, the trial court affirmed the decision of the department. The trial court stated that the notice of the hearing did not deny the plaintiff due process because it satisfied the four requirements in General Statutes § 4-177 (b), the decision was supported by substantial evidence, which consisted of Klaus' report and the testimony of the plaintiff, the issue of whether the suspension ought to have been stayed was moot, and the suspension did not deprive the plaintiff

of the equal protection of the laws because the state has a compelling interest in highway safety and the decision of the hearing officer was narrowly tailored to protect that interest." *Labenski* v. *Goldberg*, supra, 33 Conn. App. 728–32.

The plaintiff appealed to this court from the decision of the trial court. In reversing the judgment, we concluded that there was "no reliable, probative and substantial evidence" to support the suspension. Id., 736. Our conclusion rested on our determination that Klaus' report, the only probative evidence in the record, was hearsay that lacked sufficient trustworthiness to be considered substantial evidence. Id., 735.

The plaintiff subsequently filed a motion for costs and attorney's fees pursuant to § 4-184a (b).[2] The trial court found that the commissioner's decision to suspend the plaintiff's license was not made "without any substantial justification" and, thus, denied the plaintiff's motion. This appeal followed.

The plaintiff claims that the trial court abused its discretion in denying her motion for costs and attorney's fees. Specifically, she challenges the trial court's finding that the commissioner's decision to suspend her license did not lack substantial justification.

Section 4-184a (b) provides that the trial court "may, in its discretion, award to the prevailing party . . . reasonable fees and expenses in addition to other costs if the court determines that the action of the agency was undertaken without any substantial justification." There is no dispute that the plaintiff was the "prevailing party" in her administrative appeal to this court. Our analysis must focus, therefore, on whether the trial court's finding that the commissioner's action was undertaken with substantial justification is proper.

---

[2] See footnote 1.

It is well settled that the decision to award attorney's fees and other costs rests solely with the trial court. See *Oakley* v. *Commission on Human Rights & Opportunities*, 38 Conn. App. 506, 512, 662 A.2d 137 (1995), aff'd, 237 Conn. 28, 675 A.2d 851 (1996). Because § 4-184a (b) provides that the court "may, in its discretion," make such an award, we review the denial of an award of such fees under an abuse of discretion standard. "In determining whether the trial court has abused its discretion, an appellate court should entertain every reasonable presumption in favor of the trial court's decision." (Internal quotation marks omitted.) Id., 512–13, quoting *Stanford* v. *Kovacs*, 36 Conn. App. 270, 279, 650 A.2d 626 (1994). Moreover, " '[w]hen reviewing a claim [made pursuant to § 4-184a (b)] that the trial court abused its discretion, every reasonable presumption should be given in favor of its correctness, and the ultimate issue is whether the court could have reasonably concluded as it did.' " *Oakley* v. *Commission on Human Rights & Opportunities*, supra, 522, quoting *Misinonile* v. *Misinonile*, 35 Conn. App. 228, 232, 645 A.2d 1024, cert. denied, 231 Conn. 929, 649 A.2d 253 (1994).

The plaintiff asserts in her brief that she is entitled to an award of costs and attorney's fees "due to her status as a prevailing party and the fact that *there was a complete absence of any substantial evidence*" to support the suspension of her license. (Emphasis added.) The "substantial evidence" standard, however, is not synonymous with the "substantial justification" language used in § 4-184a (b). "Substantial evidence exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Labenski* v. *Goldberg*, supra, 33 Conn. App. 733; see also *Connecticut Light & Power Co.* v. *Dept.*

*of Public Utility Control,* 219 Conn. 51, 57, 591 A.2d 1231 (1991).

The meaning of the statutory phrase "without any substantial justification" has not been construed by this court or our Supreme Court. We may properly seek guidance, however, from the United States Supreme Court's analysis of claims made pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 (Sup. 1996). That act provides that "[a]n agency . . . shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was *substantially justified* . . . . Whether or not the position of the agency was *substantially justified* shall be determined on the basis of the administrative record, as a whole, which is made in the adversary and justification for which fees and other expenses are sought." (Emphasis added.) 5 U.S.C. § 504 (a) (1).

In *Pierce* v. *Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988), the Supreme Court construed the phrase "substantially justified" to mean "justified to a degree that could satisfy a reasonable person." The court further concluded that the standard "is no different from the 'reasonable basis both in law and fact' formulation . . . ." Id. This reasonableness standard has also been adopted by the Second Circuit Court of Appeals. See *Federal Elections Commission* v. *Political Contributions Data, Inc.,* 995 F.2d 383, 386 (2d Cir. 1993) ("[t]he test is 'essentially one of reasonableness' "); *Environmental Defense Fund, Inc.* v. *Watt,* 722 F.2d 1081, 1085 (2d Cir. 1983).

While we recognize that the decision of the commissioner to suspend the plaintiff's license was not supported by substantial evidence because Klaus' report alone did not satisfy that standard under the circum-

stances of this case, we hold that such decision was reasonable, and, therefore, was not made without any substantial justification. The record clearly reveals that the overriding concern of the hearing officer, acting on behalf of the commissioner, in suspending the plaintiff's license was to protect the safety of the plaintiff as well as the safety of the public. We base our holding on the evidence presented to the hearing officer and the findings of fact made by him.

The hearing officer, relying on Klaus' letter, found that the patient suffered from an idiopathic seizure disorder that was the cause of the accident, that her seizure disorder was poorly controlled by medication, and that she had been warned by her physician not to drive. The hearing officer also found that the plaintiff proffered no medical reports refuting the opinions of her physicians. On the basis of these findings, the hearing officer concluded that the plaintiff failed to meet the minimum physical standards for safe operation of a motor vehicle and thus ordered the suspension of the plaintiff's driver's license.

Despite this court's later conclusion that Klaus' letter was insufficiently trustworthy to constitute substantial evidence, the information contained therein provided the hearing officer with substantial justification for suspending the plaintiff's license until she could produce an " 'acceptable' neurological report" indicating that her operation of a motor vehicle no longer posed a safety risk. We conclude that the decision to suspend her license was reasonable and, therefore, substantially justified pursuant to § 4-184a (b). Accordingly, the trial court did not abuse its discretion in denying the plaintiff's motion for costs and attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.