[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. Statement of Case
This is an administrative appeal from a final decision of the Commission on Human Rights and Opportunities ("CHRO") brought pursuant to General Statutes §§ 46a-94a and 4-183. The plaintiffs are Inessa Slootskin[1] and the CHRO. The defendant is John Brown Engineering and Construction, Inc.,[2] Ms. Slootskin's former employer.
 II. Procedural History
Plaintiff Slootskin was employed as an engineer in the defendant's heating, ventilating, and air conditioning department ("HVAC"), formerly located in Stamford, Connecticut. The defendant terminated Slootskin's employment in June 1992. The justification given by the defendant for the termination was lack of work. CT Page 5072
Slootskin filed a complaint with the CHRO alleging that her termination was the product of discriminatory employment practices in violation of General Statutes § 46a-60 (a)(1). (February 19, 1999 CHRO Decision ("Decision"), p. 1). Specifically, the plaintiff made claims of age and sex discrimination, as well as an equal pay claim. (Decision, p. 1). The CHRO hearing was conducted over many days during which., numerous witnesses testified and many exhibits were introduced.[3]
The CHRO hearing officer ("CHO") issued a final decision dated February 19, 1999. The decision contained both findings of fact and conclusions of law. The CHO found that the plaintiff had proven her age discrimination claim but not the gender discrimination or equal pay claims. (Decision, pp. 4-6).[4] Pursuant to General Statutes § 46a-86, the CHO awarded the plaintiff monetary damages for back pay and ordered the defendant to cease and desist further discriminatory treatment of its employees. (Decision, p. 6).[5]
The plaintiffs have commenced this administrative appeal through their April 8, 1999 petition, thereafter amended by pleading dated April 27, 1999. The plaintiffs alleged that they were aggrieved by the final decision and assert numerous claims of administrative error. (April 27, 1999, Amended Petition). These include, in relevant part, that the "Hearing Officer's Final Decision properly determined that Slootskin is entitled to an award of damages, including back pay and interest as a result of the discriminatory practices by her former employer John Brown." (Amended Petition, ¶ 14); "[h]owever, with respect to the determination of damages, the Hearing Officer incorrectly concluded that the plaintiff is entitled to back pay only from the time of her termination in June 1992 through March 1994," the date of the defendant's departmental relocation. (Amended Petition, ¶ 15).
The plaintiffs contend in relevant part that "[t]he limitation on Slootskin's back pay award thus adopted by the Hearing Officer was erroneous. . ." in that the defendant "had the burden of proving that Slootskin's damages should be so limited, and it manifestly failed to do so. . . ." In addition, "[t]he limitation on damages was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Finally, "[t]he limitation on the complainant's damages was in excess of the statutory authority of the agency and made upon improper and unlawful procedure." (Amended Petition, ¶ 18 (a)-(c)). The defendant disputes all claims of error.
The parties have filed comprehensive briefs with the court along with the voluminous administrative record. On January 23, 2001 the parties, acting through their legal counsel, presented extensive argument on the issues in dispute. At the request of the court, the parties stipulated to CT Page 5073 those portions of the record pertinent to this appeal. This stipulation, which was filed with the court on February 15, 2001, identifies both testimony and exhibits.
 III. Jurisdiction
A. Aggrievement
General Statutes § 46a-94a (a) provides that "[t]he Commission on Human Rights and Opportunities . . . or any complainant aggrieved by a final order of a presiding officer . . . may appeal therefrom in accordance with section 4-183." General Statutes § 4-183 provides in relevant part that "[a] person . ., who is aggrieved by a final decision may appeal to the Superior Court. . . ." "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specially and injuriously affected as to property or other legal rights." Smith v. Planning Zoning Board,203 Conn. 317, 321 (1987).
In the present appeal, the plaintiffs are the CHRO and the complainant who prevailed on her claim of age discrimination brought pursuant to General Statutes § 46a-60 (a)(1). The defendant in this appeal has not challenged aggrievement. This court finds that the plaintiffs are aggrieved.
B. Timeliness of Appeal
General Statutes § 4-183 (c) provides in relevant part: "Within forty-five days after mailing of the final decision under § 4-180 . . . a person appealing . . . shall serve a copy of the appeal on the agency that rendered the final decision . ., and file the appeal with the clerk of the superior court. . . ."
Through notice dated February 24, 1999, the CHRO transmitted the CHO's final decision dated February 19, 1999. The plaintiffs filed their appeal with the Superior Court, Stamford-Norwalk judicial district on April 9, 1999.[6] The defendant has not raised a jurisdictional defect. Thus, this court finds the appeal to be timely.
 IV. Standard of Review
"Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedures Act (UAPA)] . . . and the scope of that review is very restricted." (Internal quotation marks omitted.) CT Page 5074Cadlerock Properties v. Commissioner, 253 Conn. 661, 668, (2000). "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (j).
 Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [S]ubstantial evidence . . . is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 676-77. CT Page 5075
"The determination of whether substantial evidence exists is subject to de novo review by this court." Labenski v. Goldberg, 33 Conn. App. 727,733, (1994).
Further, the court must search the entire record to determine whether substantial evidence exists to support the agency's findings of fact, and whether the conclusions drawn from those facts are reasonable. Dolgnerv. Alander, 237 Conn. 272, 283 (1996).
 Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . ., it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts.
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 669.
 V. Discussion
Plaintiffs' Claims of Error
The plaintiffs in their August 16, 1999 memorandum and October 14, 1999 reply memorandum have raised two claims of alleged administrative error: (1) the CHO conclusion that back pay as measured from June 1992, the date of Slootskin's termination, until March 1994, the date of the defendant's departmental relocation, is contrary to the substantial evidence and factual findings, and (2) the parties were ordered by the CHO to file simultaneous briefs and reply briefs. In its opening bnef, the defendant did not address the damages issue, choosing instead to address damages only in its reply brief. The defendant argued in its reply brief that back pay was limited to the period of June 1992 to March 1994. Thus, the plaintiffs contend that Slootskin was riot given the opportunity to respond to what she regarded as an incorrect application of the law to the proven facts. The plaintiffs further contend that subsequent efforts CT Page 5076 to address this issue were not permitted by the CHO. Accordingly, the plaintiffs maintain that the resulting administrative findings regarding the award of back pay were made upon unlawful procedure and deprived Slootskin of a fair hearing with respect to damages.
1. The claim that the CHO conclusion that back pay is limited to theperiod from Slootskin's termination in June 1992 until March 1994 iscontrary to the substantial evidence and factual findings
The CHO concluded in the order portion of the February 19, 1999 final decision that "[e]vidence presented indicates that John Brown had a corporate relocation in March of 1994, and all remaining employees in theHVAC Department were laid off, except Carl Halpern." (Emphasis added; Decision, p. 6). Following this, the CHO also concluded that the assertion that "Inessa Slootskin would have remained at John Brown until her retirement . ., is speculative in light of the corporation's downsizing and relocation to New Jersey." (Decision, p. 6). Essentially, the plaintiffs contend that these conclusions are inconsistent with the findings of fact and unsupported by substantial evidence in the administrative record.
The CHO found that Slootskin was the victim of overt age discrimination in the course of her employment. This discrimination culminated in her termination on June 5, 1992. In the final decision the CHO stated in part:
 The termination of the older members of the HVAC Department was clearly based upon age and the desire to bring in younger employees that could start at a lower salary. . . .
 John Brown cites the basis for termination in that there was a lack of work in the department in 1992. This does not justify the termination of Ms. Slootskin, who was 54 years of age at the time of her discharge and had over 30 years of experience. There were several younger, less experienced engineers, who were hired after the Complainant, and who were assigned new projects.
 The Complainant had worked on projects for General Electric Corp. A major project for that corporation was going to be assigned in the department, and the Complainant was specifically requested to update her resume, as the client requested her services. The General Electric project was assigned to a younger CT Page 5077 worker, one week after the Complainant's termination.
 Additionally, during slow periods, the Respondent did not assign work to the Complainant as well as the other "older" employees, who were also terminated.
 The justification by the Respondent that there was a lack of work was pretextal (sic) as it was clear that the older workers were not assigned work, when the younger workers were so busy that they had substantial overtime.
Decision, pp. 4-5
In support of these conclusions, the CHO made twenty-four findings of fact.
1. Inessa Slootskin was born in 1938 in the former Soviet Union.
 2. The Complainant received the Russian equivalent of a Master Degree in Mechanical Engineering in 1960. She has experience as a HVAC engineer in the Sovict Union prior to emigrating to the United States in 1980.
 3. The Complainant commenced her employment with the Respondent in 1984, joining as an entry-level engineer.
 4. In 1986, the Complainant left John Brown due to a work shortage and initially obtained employment as a Senior Engineer with the Kasper Group, and then in 1987, was a Senior Engineer at Vogel Engineering.
 5. In October of 1988, the Complainant rejoined John Brown as a "Senior Engineer".
 6. The Complainant's supervisor, for most of her employment at John Brown, was Richard Rogulski.
7. Joel Parisy replaced Rogulski as manager of the HVAC Department.
8. On June 5, 1992, the Respondent terminated Ms. Slootskin. CT Page 5078
 9. of the 12 people in the HVAC Department in January, 1992, the Complainant was the only female.
 10. At the time of her termination, the Complainant was 54 years of age and had been at John Brown approximately 6 years.
 11. During the eight months that preceded her termination, the Complainant received the fewest new projects to work on.
 12. The Complainant had done substantial work for General Electric Corp., which was satisfied with her performance.
 13. In 1992, Ms. Slootskin was asked to update her resume for the purpose of participating in a new General Electric project.
 14. After her termination, the Complainant learned that the anticipated GE project did arrive at the company contemporaneous with her termination.
 15. The GE project was assigned to Frank Tierno (age 40), shortly after the termination of the Complainant.
 16. On the day of her termination, additional work on the Complainant's American Cyanamid project was assigned to Dan Liang (age 26).
 17. Although the Respondent claimed that the lack of work was the basis for her termination, new work continued to come into the company and every remaining engineer in the HVAC Department remained busy.
 18. Between January and June 1992, the Respondent terminated 4 engineers in the HVAC Department. Richard Rogulski, Vishnu Desai, Yasushi Endo and the Complainant. All of those terminated were over the age of 45. Not one of the 4 engineers under the age of 40 was terminated.
 19. The retained engineers were: Frank Tierno, age 40 CT Page 5079 James Mulligan, age 27 Ashok Krishnamurthy, age 34 Stanley Armistead, age 26
 20. Joseph Cozza, the Vice-President and Director of Engineering was responsible for the hiring and firing decisions in the HVAC Department.
 21. Richard Roguiski, who managed the HVAC Department reported to Joseph Cozza.
 22. Mr. Cozza frequently urged Mr. Rogulski that the company needed "new blood". Mr. Rogulski understood this to mean to terminate older employees and bring in younger employees.
 23. Mr. Cozza advised Mr. Parisy, who replaced Mr. Rogulski as HVAC Department Head, that he wanted "to bring some young engineers on board, people out of college".
 24. In March of 1994, the Respondent relocated its offices from Stamford to New Jersey. At that time only one engineer remained, Carl Halpern.
(Citations to record omitted; Decision pp. 2-3)
In reaching the conclusions stated above, the CHO apparently relied on finding of fact number 24. Accordingly, the damages awarded for back pay were calculated from the date of the plaintiffs termination, June 1992, until March 1994, the date of the relocation.
The plaintiffs maintain that the substantial evidence produced at the administrative hearing clearly demonstrates that younger HVAC engineers from the Stamford office were transferred, or offered the opportunity to transfer, to the defendant's New Jersey office. Thus, according to the plaintiffs, "had Inessa Slootskin not been terminated unlawfully by John Brown in June 1992 on the basis of her age, she would have been fully eligible for continued employment with the company when the Stamford location was closed and the remaining members of the HVAC department were transferred to New Jersey." (Plaintiffs' August 16, 1999 Brief, p. 8).
The defendant does not dispute the claim that several employees of the HVAC department were offered jobs at the New Jersey office. Nor does it contest the plaintiffs' position that several of these employees accepted the offers and continued their employment. (Defendant's September 15, CT Page 5080 1999 Brief, pp. 8-9). The defendant asserts, however, that "[i]f Slootskin had not been selected for layoff in June, 1992, there was sufficient evidence in the record for the Hearing Officer to have concluded that Slootskin would have been regarded as one of the least competent of the remaining HVAC department employees." (Defendant's September 15, 1999 Brief, p. 6). In support of this proposition, the defendant compares the results of HVAC departmental employee evaluations of Slootskin and others. (Defendant's September 15, 1999 Brief, p. 6 et seq.). Accordingly, the defendant postures that the CHO was correct in concluding that any award of back pay for the period of time beyond March 1994 was speculative in light of the defendant's downsizing and relocation. (Decision, pp. 7-8).
The CHO found that, although the defendant claimed that Slootskin was terminated for lack of new work, all other engineers in the HVAC department remained occupied. During the period of January to June 1992, four HVAC engineers over the age of 45 were terminated. The engineers who were retained were Frank Tierno, age 40; James Mulligan, age 27; Ashok Krishamurthy, age 34; and Stanley Armistead, age 26. (Decision, Findings nos. 17-19).
A review of the stipulated record discloses evidence that in approximately midyear 1992, the manager of the defendant's Stamford, Connecticut office was made regional manager of the company. In this capacity, this individual had supervisory responsibilities for the New Jersey office. This arrangement facilitated an examination of staffing needs for both offices. (Transcript, May 20, 1997, p. 856). The manager of the HVAC department, Joel Parisy, recommended the plaintiff be terminated. This recommendation was approved by Joseph Cozza, the Vice-President and Director of Engineering. Cozza made the final personnel decisions, e.g. hiring and firing. (Transcript, May 20, 1997. p. 974; Decision, p. 3, Finding no. 20). Parisy informed Slootskin that her employment was being terminated, but he noted his personal recommendation on the company's records that Slootskin be rehired in the future. (Transcript, May 20, 1997, p. 975-76). Parisy also expressed his view at the administrative hearing that of the four engineers terminated, Slootskin was the only individual who he would have volunteered to rehire. (Transcript, May 20, 1997, p. 977). Parisy believed that Slootskin was a capable individual who could function as the number two person on a major project. (Transcript, May 21, 1997, p. 991). On a small HVAC project, he felt that she was "[a]bsolutely" qualified to the lead engineer. (Transcript, May 20, 1997, p. 842).
The defendant completed periodic performance evaluations on the HVAC employees. (See e.g. Return of Record ("ROR"), Claimant Exhibits 7-11). There were three employee performance evaluations completed for the CT Page 5081 plaintiff during the years of 1985-95. (ROR, Claimant Exhibit 11). The last evaluation was prepared on September 23, 1991. (ROR, Claimant Exhibit 11). Parisy completed that evaluation, notwithstanding the fact that he had only been the manager of the HVAC department for about a month. (Transcript, May 21, 1997, p. 1000). He informed the plaintiff at the time of the evaluation that he really did not have enough information to evaluate her employee performance. (Transcript, May 21, 1997, p. 1001). Despite Parisy's claimed lack of familiarity with Slootskin's abilities, he completed the evaluation and rated Slootskin at a comparatively low 3.3 out of 5. (ROR, Respondent's Exhibit 31).
Slootskin testified that she met with Parisy the first week of June 1992. (Transcript, September 5, 1996, p. 566). It was her belief that he wanted to discuss a new project assignment for her. (Transcript, September 5, 1996, p. 567). She was shocked and upset to learn that her employment was being terminated. (Transcript, September 5, 1996, p. 567). Slootskin indicated that she questioned why Ashok Krishnamurthy, a younger engineer with less seniority was being retained. (Transcript, September 5, 1996, p. 567-68). Parisy informed her that Krishnamurthy was getting married and needed to work. (Transcript, September 5, 1996, p. 568). Slootskin testified that Parisy told her that her husband "has a good job" and that she would have no problem finding another job. (Transcript, September 5, 1996, p. 568). Slootskin also testified that she was informed by Parisy that another younger employee, Frank Tierno, was not a candidate for termination because he had just bought a new house. (Transcript, September 5, 1996, p. 571). During the meeting, Slootskin offered to take a salary cut to save her job. (Transcript, September 5, 1996, p. 572).
Subsequent to her termination Slootskin unsuccessfully sought to obtain employment in the field of engineering. (ROR, Claimant Exhibit 26). She was prepared to relocate if employment in another state was secured. (Transcript, September 5, 1996, p. 599 et seq.). Slootskin accepted other types of employment to earn an income. (Transcript, September 5, 1996, p. 608 et seq.). On two occasions, she applied for employment at the defendant's New Jersey office. (Transcript, September 5, 1996, p. 618). She was unsuccessful in regaining her job. (Transcript, September 5, 1996, p. 618). At the time of the administrative hearing, Slootskin had secured full-time employment and was seeking certification as an asbestos inspector. (Transcript, September 5, 1996, p. 614).
The court is cognizant that General Statutes § 46a-86 (b) "vests discretion in a hearing officer to grant such relief under the proper circumstances." Commission of Human Rights Opportunities v. Truelove Maclean, Inc., 238 Conn. 337, 351 (1996). But the CHO, in the otherwise comprehensive findings of fact, did not address the basis for the CT Page 5082 conclusion that "[e]vidence presented indicates that John Brown had a corporate relocation in March of 1994, and all remaining employees in theHVAC Department were laid off, except Carl Halpern." (Emphasis added; Decision, p. 6). In fact, contrary to this conclusion, finding of fact number 24 stated only that at the time "the Respondent relocated its offices . ., only one engineer remained, Carl Halpern." This finding is supported by substantial evidence in the record as discussed above. The conclusion, however, is not supported. The parties do not dispute that a number of the employees of the HVAC department in Stamford were transferred or offered the opportunity to transfer to the New Jersey office. The evidence in the record shows that in March of 1994, Parisy was transferred to the New Jersey office. (Transcript, May 20, 1997, p. 804). Two engineers, James Mulligan and Carl Halpern, remained in Connecticut. Mulligan left his position shortly thereafter in lieu of relocating to New Jersey. (Transcript, May 20, 1997, p. 804). In 1996, Mulligan returned to work for the defendant in the New Jersey office. (Transcript, May 20, 1997, p. 877). Halpern was transferred to New Jersey. (Transcript, May 20, 1997, p. 875). Frank Tierno was offered the opportunity to work at the New Jersey office but did not accept the offer and quit his job with the defendant. (Transcript, May 20, 1997, p. 875). Ashok Krishnamurthy was transferred to the New Jersey office. (Transcript, May 20, 1997, p. 876).
Thus, the arguments presented by all parties do, in fact, contest the conclusion reached by the CHO. The defendant's argument that Slootskin had inferior engineering skills, even if correct, does not support the CHO's pivotal and erroneous conclusion that "[e]vidence presented indicates that John Brown had a corporate relocation in March of 1994,and all remaining employees in the HVAC Department were laid off, except Carl Halpern." (Emphasis added; Decision, p. 6). The CHO's conclusion is, therefore, internally inconsistent with the factual findings and the substantial evidence in the record.
The role of the court in this appeal is "to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . ." Cadlerock Properties v. Commissioner, supra, 253 Conn. 676-77. This court has searched the stipulated portions of the record and determined that the fundamental conclusion reached by the CHO that "all remaining employees in the HVAC Department were laid off, except Carl Halpern" is unreasonable in light of the substantial evidence to the contrary. The court finds that substantial rights of the plaintiffs have been prejudiced because the CHO's administrative conclusions as to damages and CT Page 5083 resulting decision are clearly erroneous in view of the reliable, probative, and substantial evidence of the entire record. Accordingly, the appeal is sustained with respect to this particular issue.
B. The claim that the defendant violated the CHO's briefing schedule anddeprived the plaintiff of a fair hearing with respect to damages
Because it has sustained the plaintiffs' appeal with respect to the first claim of error, the court finds it unnecessary to address the second claim of error and declines to do so.
 VI. Conclusion
The court finds that substantial rights of the plaintiffs have been prejudiced. The final decision of the agency with respect to the damage issue on appeal does not comply with the law. The appeal is sustained, judgment is rendered in favor of the plaintiffs. Pursuant to General Statutes §§ 4-183(j) and 46a-94a(a), the matter is remanded to the agency for further proceedings consistent with this opinion.
BY THE COURT
PETER EMMETT WIESE, JUDGE