[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. STATEMENT OF CASE
This is an administrative appeal from a final decision of the State of Connecticut, Department of Social Services, (DSS), brought pursuant to General Statutes §§ 17b-61 and 4-183. The plaintiff is Ellen Stahl; the defendant is the Commissioner of DSS.
 II. PROCEDURAL HISTORY
The plaintiff has been the recipient of benefits under the Temporary Family Assistance Program (TFA) General Statutes § 17b-112 et seq. Pursuant to General Statutes § 17b-112 (a) "[t]he Department of Social Services shall administer a temporary family assistance program under which cash assistance shall be provided to eligible families in accordance with the temporary assistance for needy families program, established pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996." The Commissioner of DSS was required to CT Page 5741-au adopt policies and procedures in the form of regulations necessary to implement the TFA program. General Statutes § 17b-112 (k). The commissioner has adopted these regulations, and they are contained within the DSS Uniform Policy Manual (UPM).
The plaintiff was notified that her benefits were being discontinued on June 30, 1999 for a period of three months because she terminated her employment without good cause. She was further informed that the latest incident was her third TFA program violation. The plaintiff was notified that she could re-apply for benefits at the expiration of the three month period. (Return of Record, (ROR), Vol. 1, p. 20.) Finally, the plaintiff was notified that a hearing would be conducted upon her request if she disagreed with the benefit suspension. (ROR, Vol. 1, p. 21.)
The plaintiff made a written request for an administrative hearing. (ROR, Vol. 1, p. 66.) The hearing was initially scheduled to take place on June 24, 1999. (ROR, Vol. 1, p. 67.) It was thereafter rescheduled to July 29, 1999. (ROR, Vol. 1, p. 68.) The Fair Hearing Officer (FHO), through a letter dated August 9, 1999 notified the plaintiff that as a result of her non-appearance her hearing request would be closed unless she made contact with DSS within a period often days. (ROR, Vol. I, p. 69.) Thereafter, by letter dated August 17, 1999, FHO William Revill notified the plaintiff that an administrative hearing had been rescheduled for September 10, 1999. (ROR, Vol. 1, p. 70.)
On September 10, 1999, an administrative hearing was conducted before the DSS FHO. At the hearing numerous exhibits were made a part of the record and sworn testimony was received.
The FHO issued a written decision dated September 21, 1999 (Decision). The Decision included findings of fact and conclusions of law. The FHO found no error in the DSS regional office's decision to suspend the plaintiff's TFA benefits for three months. (Decision, p. 3.)
The plaintiff has commenced this administrative appeal through her complaint dated October 27, 1999 filed in the Superior Court, judicial district of New London at Norwich. This appeal was thereafter transferred to the judicial district of New Britain by order dated February 2, 2000.
 III. JURISDICTION
A. Aggrievement
General Statutes § 17b-61 (b) provides, in part: "[t]he applicant CT Page 5741-aw . . . if aggrieved, may appeal therefrom in accordance with section 4-183." General Statutes § 4-183 provides in relevant part that "[a] person . . . who is aggrieved by a final decision may appeal to the Superior Court. . . ." "To be an aggrieved person one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specifically and injuriously affected as to property or other legal rights." Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987).
In the present matter, the plaintiff's TFA benefits were terminated. The defendant in this appeal has not challenged aggrievement. This court finds that the plaintiff is aggrieved.
B. Timeliness of Appeal
General Statutes § 4-183 (c) provides in relevant part: "Within forty-five days after mailing of the final decision under § 4-180 . . . a person appealing . . . shall serve a copy of the appeal on the agency that rendered the final decision . . . and file the appeal with the clerk of the superior court
Through notice of decision dated September 21, 1999, the DSS transmitted the FHO's final decision. The plaintiff filed the appeal with the superior court, judicial district of New London at Norwalk. It was thereafter transferred to the judicial district of New Britain. The defendant has not raised a jurisdictional defect. Thus, this court finds the appeal to be timely.
 IV. STANDARD OF REVIEW
"Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedures Act (UAPA)] . . . and the scope of that review is very restricted." (Internal quotation marks omitted.)Cadlerock Properties v. Commissioner, 253 Conn. 661, 668 (2000). U.S. cert denied, 121 S.Ct. 1089 (2001). "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decision are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly CT Page 5741-ax unwarranted exercise of discretion." General Statutes § 4-183 (j).
 Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [S]ubstantial evidence . . . is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 Conn. 676-77.
"The determination of whether substantial evidence exists is subject to de novo review by this court." Labenski v. Goldberg, 33 Conn. App. 727,733 (1994). Further, the court must search the entire record to determine whether substantial evidence exists to support the agency's findings of fact, and whether the conclusions drawn from those facts are reasonable.Dolgner v. Alander, 237 Conn. 272, 283 (1996).
 Judicial review of the conclusions of law reached CT Page 5741-ay administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts.
(Citations omitted; internal quotation marks omitted.) CadlerockProperties v. Commissioner, supra, 253 conn. 669.
 V. DISCUSSION
A. The Plaintiff's Claim of Error
The plaintiff contends in her January 6, 2000 brief that "[t]here was no substantial and competent evidence to support the conclusion of the fair hearing officer." (Plaintiff's Brief, pp. 3-4). Thus, "the Department's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." (Plaintiff's Brief, pp. 3-4). The plaintiff maintains that the evidence demonstrates that she "left a low paying part-time job for a full-time job with greater benefits." (Plaintiff's January 6, 2000 Brief, p. 6.)
The defendant responds, inter alia, in its January 27, 2000 brief that the FHO's September 21, 1999 decision is based upon the substantial evidence in the record and a correct application of the law.
The FHO in the September 21, 1999 final decision stated the following in pertinent part:
 After reviewing the evidence and testimony submitted for the hearing record, I find no error with the Regional Office's determination. The Appellant quit her job based because (sic) she thought another employer would offer her a better job. She had applied for another job and had two interviews. She thought CT Page 5741-az she would get the job so she left her job at DuPont-Red Tag. Unfortunately she did not get this job and found a job with AMS Relocation. She then worked at AMS Relocation for half a day and left because she found that she could not do the lifting involved.
 The Appellant has not shown that she had good cause for leaving her job. When she left DuPont-Red Tag, she did not have another job waiting for her, only the hopes of getting another job. That job never materialized. Leaving a paying job for a job that had not even been offered does not qualify as a good reason for leaving a job. The Appellant has not shown that she had a good reason to quit her job. As this is the Appellant's third employment sanction, the Regional Office is correct to discontinue her Jobs First benefits for three months and may proceed with this sanction.
(Decision, pp. 3-4.)
In support of these conclusions, the FHO made five separate findings of fact:
 1. As of June 1999, the Appellant was in the sixteenth month of time limited assistance.
 2. The Appellant has been sanctioned twice for previous occurrences of noncooperation with employment service requirements.
 3. The Appellant was working for DuPont-Red Tag; her last day of work at DuPont-Red Tag was April 1, 1999.
 4. The Appellant has not shown that she had good cause for leaving her job.
 5. The Regional Office discontinued the Appellant's Jobs First benefits effective June 30, 1999.
(Citations to record omitted; footnote omitted.) (Decision, p. 2).
The FHO, in the final decision, addressed in detail the applicable CT Page 5741-ba portion of the Uniform Policy Manual. (Decision, pp. 2, 3). These regulations include: UPM § 8530.55 A.1 which provides that the "[f]ailure of a mandatory participant to comply with Employment Services participation requirements may subject the assistance unit to a penalty." The employment services participation requirements are set forth in UPM § 8530.15 which provides in relevant part:
 All mandatory Employment Services participants must comply with Employment Services requirements, unless there is good cause not to do so. Failure to comply in an Employment Services activity without good cause results in a penalty being imposed on the assistance unit. . . .
Compliance includes the following:
* * *
 F. Continuing in employment and maintaining the level of earnings;
UPM § 8530.60 sets forth the standards to determine if "good cause" for noncompliance with participation requirements exists. It provides in pertinent part:
A. General Circumstances
 Good cause is considered to exist when circumstances beyond the participant's control reasonably prevent him or her from complying with an Employment Services requirement.
* * *
C. Additional Good Cause Reasoning — Failure to Maintain Earnings
 In addition to . . . above, the following good cause criteria may apply to a voluntary quit, reduction in hours or wages, of employment, or termination of employment due to wilful misconduct:
* * *
 4. The person quit a job or reduced hours to accept CT Page 5741-bb other employment which has the potential of leading to self-sufficiency.
 5. The person quit the job or reduced hours to accept other employment with earnings at or above the level of the previous employment.
The penalty for non-compliance resulting in a third violation within twenty one months of the commencement of the TFA benefits is contained within UPM § 8530.55 D.1.c. "For the third and all subsequent violations, the entire assistance unit is ineligible for Temporary Family Assistance for a period of three (3) consecutive months. To again receive assistance, the assistance unit must re-apply and re-establish eligibility for Temporary Family Assistance at the expiration of the three month period."
A review of the administrative record reveals that two witnesses provided sworn testimony. These individuals were the plaintiff and Rosemary Abrahamson, a DSS Family Independence Representative. (Transcript, (Trp), pp. 1 et seq.) The record also contains numerous exhibits. (ROR, Vol. I, pp. 7-65.) The record contains evidence which indicates that the plaintiff had been a recipient of TFA cash benefits since 1986. Specifically, at the time of the September 10, 1999 hearing, she had received benefits for a period of nineteen months. (Trp. p. 3.) The plaintiff had two previous sanctions imposed upon her by DSS in connection with her TFA benefits. (Trp. pp. 4, 7.) On May 5, 1999, DSS received notice that the plaintiff had left her employment at DuPont-Red Tag cleaners (Red Tag) on April 1, 1999. (Trp. p. 3.) On May 6, 1999, DSS sent the plaintiff a notice "requesting adequate verification of good cause" for her voluntary termination of her Red Tag job. (Trp. p. 3.) The plaintiff did not respond to the DSS inquiry by the deadline established. (Trp. p. 4.) The plaintiff did, however, indicate in a telephone conversation that, after quitting her job at Red Tag, she worked for one day at a company known as AMS. (Trp. p. 4.). DSS made written inquiry of AMS concerning the plaintiff's work history with the company. (Trp. p. 4; ROR, Vol, I, p. 12.) AMS responded "She never worked for AMS." (ROR, Vol. I, p. 12.) The response included the signature of the AMS representative, the firm's federal employer identification number, date of response and telephone number. (ROR, Vol., I, p. 12.)
The plaintiff testified that she had been employed by Red Tag until April 1, 1999 when she notified the company that she was quitting. "I left Red Tag, I had given my notice because I had gotten a second interview at the Century Communications [Century] and I was pretty sure I was going to CT Page 5741-bc be hired. . . ." (Trp. p. 5.) At the time that she notified her employer that she was quitting, she did not have a job secured with Century. (Trp. pp. 5-6.) Century never offered the plaintiff employment. (Trp. pp. 5-6.) The plaintiff indicated that on April 2, 1999, she worked for one half day unloading trailer trucks for AMS; however, she quit because she was physically unable to do the work as a result of an existing disability to her spine. (Trp. pp. 4-6.) The plaintiff testified that they "paid me under the table." (Trp. p. 7.) The plaintiff requested additional time to procure verification of employment with AMS from an individual she identified as Jean Johnson. (Trp. p. 7.) The FHO granted the request, setting a deadline of September 17, 1999. (Trp. p. 8.) The plaintiff thereafter submitted a handwritten note bearing a signature name of Jeannee Johnson, Warehouse Supervisor. The note which appears to be written on lined paper states in part that on April 2, 1999 the plaintiff worked for AMS for one half day but could not do the work because "[a]t about noon her back began to bother her. . . . Had she been able to do the job she would have started out at $7.00/hr and probably would have worked full time." (ROR, Vol. 1, p. 65.) Neither the telephone number on the handwritten note nor the name of the AMS representative is the same as indicated on the written response by AMS to the previous inquiry of DSS. (ROR, Vol. I, p. 12.) Finally, the plaintiff testified that as of the date of the administrative hearing she had "just got hired this week at Broadway Grill in Norwich and [she would] be starting next week." This was at present a part-time job. (Trp. p. 6.)
The court, having searched the entire record, finds that there exists substantial evidence to support the FHO's findings of fact and conclusions. "The question is not whether the trial court would have reached the same conclusion but whether the record before the [FHO] supports the action taken." Hospital of St. Raphael v. Commission ofHospitals and Health Care, 182 Conn. 314, 318 (1980). The plaintiff testified that on April 1, 1999 she voluntarily terminated her employment with Red Tag. The justification for this conduct was a potential job with Century. However, when she took this action she did not have a commitment from Century and ultimately did not obtain that job. This placed the plaintiff in a position where she worked a one-half day at AMS, and as of the September 21, 1999 administrative hearing, almost six months later, she still was not working.
The FHO's conclusion of law that "good cause" did not exist to justify the voluntary termination of the Red Tag job is supported by substantial evidence in the record. The penalty imposed by the FHO is a correct application of the UPM penalties to the substantial evidence presented. CT Page 5741-bd
Accordingly, the court finds for the defendant.
 VI. CONCLUSION
For all of the foregoing reasons, the appeal from the DSS FHO's September 21, 1999 decision is ordered dismissed.
BY THE COURT
PETER EMMETT WIESE, JUDGE